585 So.2d 374 (1991)
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant,
v.
NAPLES COMMUNITY HOSPITAL, INC., Appellee.
No. 90-03710.
District Court of Appeal of Florida, Second District.
August 14, 1991.
Rehearing Denied September 18, 1991.
J. Scott Murphy of Parker, Johnson, McGuire & Michaud, P.A., Orlando, for appellant.
*375 David H. Eisenstat, P.C., Michelle L. Gilbert, and Joy Heath Thomas of Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., and Cathy S. Reiman of Cummings & Lockwood, Naples, for appellee.
PATTERSON, Judge.
St. Paul Fire & Marine Insurance Company (St. Paul) appeals from the summary judgment which determines that it has the obligation under its liability insurance policies to defend appellee Naples Community Hospital, Inc. (Naples), in a lawsuit Collier Medical Center, Inc. (Collier), filed against Naples. We hold that the causes of action raised by Collier are not covered by the terms of the insurance contracts and, therefore, reverse.
On February 11, 1988, Collier and several individual plaintiffs filed a complaint against Naples, its chief executive officer, and several other defendants, after Collier failed to secure a certificate of need from the Department of Health and Rehabilitative Services for the construction and operation of a new hospital in Collier County, Florida. In the complaint, Collier alleged that as early as 1981 Naples and the other defendants conspired to tortiously interfere with Collier's business or contractual relationships and engaged in the unreasonable restraint of trade, by maintaining contracts and agreements to fix the number of hospital beds in the Collier County area and to fix the prices of hospital services at artificially high levels. It alleged that Naples and its coconspirators made efforts in administrative channels to see that Collier's application to build a hospital in Collier County would be denied.
Upon receipt of Collier's complaint, Naples provided St. Paul written notice of the suit and requested that St. Paul assume the defense of the action pursuant to the terms of its general liability and excess umbrella liability insurance policies. St. Paul denied coverage. Thereafter, on February 7, 1990, Naples filed a complaint against St. Paul, seeking a declaration by the trial court that St. Paul had breached its contracts of insurance with Naples. It argued that Collier's complaint alleged causes of action for defamation and malicious prosecution which fell within the "personal injury" provisions of their policies.[1] Naples alleged that the policies obligated St. Paul to defend Naples and to pay all costs and attorney's fees incurred in the litigation, in addition to any damages that might be assessed against Naples.
On November 30, 1990, after consideration of the arguments of counsel, the trial court granted the summary judgment in favor of Naples, finding that St. Paul had the duty to pay the costs and reasonable attorney's fees Naples incurred in defending Collier's suit.
On appeal St. Paul argues that the allegations in Collier's complaint, e.g., that there were "joint efforts to create publicity *376 adverse" to Collier and that Naples provided "false information" in the evidence presented to the hearing officer, do not amount to a cause of action for defamation. It argues that the complaint did not allege that Naples injured the reputation of Collier by its defamatory statements. We agree.
The reputation of a corporation can be injured by a false publication of defamatory matter, which prejudices its trade or business, or deters third persons from dealing with it. Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 378 F.2d 377 (5th Cir.1967). "Since a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, property or business that a corporation can be injured by a false publication." 378 F.2d at 381.
The complaint Collier brought sought damages and injunctive relief for conspiracy in restraint of trade, tortious interference with the business or contractual relationships of Collier, and the deprivation of constitutional rights. None of these allegations attack Collier's credit record, property, or business practices. Therefore, they fail to fall under the personal injury provisions of the policies, specifically the coverage for libel, slander and malicious prosecution, as Naples claims.
An indication that the action is not based on defamation or slander is that Collier did not pursue damages for injury to its reputation. As St. Paul points out, the damages claimed were for lost profits and costs as a result of the delay and inability to construct a hospital. See, e.g., Lazzarra Oil Co. v. Columbia Casualty Co., 683 F. Supp. 777 (M.D.Fla. 1988), aff'd, 868 F.2d 1274 (11th Cir.1989).
Further, there were no facts in the record to support a cause of action for malicious prosecution. Naples did not institute a bogus civil or criminal proceeding against Collier. See Della-Donna v. Nova Univ., Inc., 512 So.2d 1051 (Fla. 4th DCA 1987).
Since the relief sought does not fall within the terms of the contracts of insurance, we conclude that St. Paul had no duty to defend Naples in the lawsuit with Collier. Accordingly, we reverse the summary judgment entered in favor of Naples.
Reversed and remanded.
SCHOONOVER, C.J., and CAMPBELL, J., concur.
NOTES
[1] Between October 1, 1981, and October 1, 1986, St. Paul issued a comprehensive general liability policy covering "personal injury," which states:

Personal Injury means any of the following three types of interference with someone's rights that happens in the course of your business while this agreement is in effect:
1. False arrest, wrongful detention or imprisonment or malicious prosecution... .
2. Libel and slander, defamation of character or invasion of the rights of privacy.
On October 1, 1986, the insuring agreement was amended as follows:
Personal injury means injury, other than bodily injury, caused by any of the following offenses that result from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you:
-false arrest, detention or imprisonment;
-malicious prosecution;
-wrongful entry or wrongful eviction;
-libel or slander;
-written or spoken material made public which belittles the product or work of others;... .
Beginning October 1, 1985, St. Paul issued an excess umbrella liability policy which states:
The term "Personal Injuries", wherever used herein means (a) bodily injury, mental injury, mental anguish, shock, sickness, disability; (b) false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, humiliation, assault and battery committed for the purpose of preventing or eliminating danger to persons or property; (c) also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any Advertising activities.
Both the commercial general liability protection policy and the excess umbrella policy were renewed through October 1, 1988.