AMERICAN MOTORISTS
INSURANCE COMPANY,
Plaintiff,

v.

SOUTHERN SECURITY LIFE IN-
SURANCE COMPANY, Defen-
dant/Counterclaim Plaintiff,

v.

American Motorists Insurance Company
and United States Fidelity and Guar-
anty Company, Counterclaim Defen-
dants.

No. Civ.A. 98–C–960–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 6, 2000.

See also 2000 WL 52462.

H.E. Nix, Jr., Steven A. Higgins, Nix &
Holtsford, Montgomery, AL, for American
Motorists Insurance Company, plaintiff.

Don B. Long, Jr., Andrew D. Block,
Johnston, Barton, Proctor & Powell, Bir-
mingham, AL, for Southern Security Life
Insurance Company, Sue Anne Gassett,
defendants.

Gregory S. Ritchey, Ritchey & Ritchey, Birmingham, AL, for Christopher Bennett, Elois D. Bennett, defendants.

Elizabeth Ann McMahan, Spain & Gillon, Birmingham, AL, for United States Fidelity & Guaranty Company, counter–defendant.

## MEMORANDUM OPINION AND ORDER

CARROLL, United States Magistrate Judge.

### I. PROCEDURAL HISTORY AND FACTS

American Motorists Insurance Company filed a complaint for declaratory judgment on August 26, 1998 seeking a declaration that it owed neither a defense or indemnity to the defendants, Southern Security, Sue Ann Gassett, Christopher Bennett and Elois Bennett, in two lawsuits filed in the Circuit Court of Lowndes County, Alabama by Eva Mae Howard and by Willie Mae Oliver and Eugene Oliver, Jr. The Howard complaint alleges that the defendants made misrepresentations to Howard on August 12, 1986 and on September 1, 1991 relative to her purchase of a whole life insurance policy and when the policy would be paid up. Howard alleges that when she learned that the policy she purchased would not be paid up in August of 1996, she suffered metal anguish and continues to do so. The Olivers allege that they have suffered mental anguish and continue to do so as a result of similar misrepresentations made to them by the defendants. Both Howard and the Olivers filed suit on April 23, 1996. AMICO insured Southern Security from August 1, 1996, to August 1, 1997 pursuant to a commercial general liability policy and a commercial catastrophe policy. AMICO defended Southern Security and agent Sue Ann Gassett[1] in the two suits under a strict reservation of rights. On September 29, 1998, Southern Security filed an answer and a counterclaim in this declarato-

ry action against AMICO alleging that AMICO's insurance policy requires AMICO to defend and indemnify it in the suits that Howard and the Olivers filed. Southern Security settled the lawsuits with Howard and the Olivers on August 31, 1999 and has amended its complaint to seek indemnification from AMICO portions of the amounts Southern Security paid to settle the lawsuits.

This matter is before the court on AMICO's motion for summary judgment and Southern Security's cross-motion for summary judgment. For the reasons which follow, the court finds that AMICO is entitled to summary judgment and Southern Security's cross motion is due to be denied.

### II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine

---

**1.** AMICO provided no defense for the other defendants, Eloise and Christopher Bennett.

Southern Security and Gassett join here in filing a cross-motion for summary judgment.

whether there exists genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears the "exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III.  DISCUSSION

### A.  CHOICE OF LAWS

■ Both AMICO and Southern Security allege that Florida law applies to the interpretation of the insurance contract in this case. Because federal courts in diversity cases apply the substantive law of the states in which they sit, this court must apply the Alabama conflict of law rules. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the context of insurance cases, the court is obliged to apply the laws of the state where the last act is "receipt and acceptance" of the insurance policy. *Brown Machine Works & Supply, Inc. v. Insurance Co. of North America, Inc.,* 951

F.Supp. 988, 992 (M.D.Ala.1996). In the instant case, the last act and receipt and acceptance of the insurance policy took place in Florida, where Southern Security has its principal place of business. Therefore, this court must apply Florida law with respect to the AMICO insurance contract.

### B.  INSURANCE CONTRACT INTERPRETATION

■ According to Florida law, whether an insurer has a duty to defend its insured is determined by allegations in the complaint. *Kopelowitz v. Home Insurance Co.,* 977 F.Supp. 1179, 1185 (S.D.Fla.1997). Therefore, if the allegations contained in the underlying complaint accuse the insured of actions sufficient to invoke coverage under the insurer's policy of insurance, the insurer must defend and indemnify. *Id.* If, however, based on the allegations of the complaint and the language contained in its insurance policy, AMICO can establish as a matter of law that there is no possible legal or factual premise on which it could be obligated to indemnify Southern Security, it will not have a duty to defend. *See Allstate Ins. Co. v. Zuk,* 78 N.Y.2d 41, 571 N.Y.S.2d 429, 431, 574 N.E.2d 1035 (1991). The court also recognizes that insurance contracts must be construed liberally in favor of the insured and strictly against the insurer. *New Amsterdam Casualty Co., v. Addison,* 169 So.2d 877 (Fla. 2d. DCA 1964).

AMICO first contends that its commercial general liability insurance policies exclude coverage for insurance and related operations. The insurance policy states:

"This insurance does not apply to 'bodily injury,' 'property damage,' advertising injury,' or 'personal injury' for which the insured may be held liable because of:

1. With respect to any contract or treaty of insurance, reinsurance, suretyship, annuity, endowment or employee benefit plan, including applications, receipts or binders:

(a) Any obligation assumed by any insured; or

(b) The failure to discharge or, the improper discharge of, any obligation or duty, contractual or otherwise . . ."

3. The rendering or failure to render professional services in

(a) Advising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative thereof;

(b) Effecting insurance, reinsurance or suretyship coverages."

Therefore, based on the foregoing policy language, AMICO contends that it is not obligated to defend or indemnify Southern Security in the lawsuits filed by Howard and Oliver. Southern Security argues in opposition that because the Olivers and Howard are not seeking to enforce Southern Security's liability under an insurance contract, the exclusionary language contained in Section 1(a) is not applicable. Southern Security further alleges that the Howard and Oliver claims do not arise from the rendition of professional services on the part of Southern Security and its agents. Accordingly, Southern Security argues that the exclusionary language of paragraph 3 does not apply. The question before the court, therefore, is whether the exclusion against coverage for insurance related business and/or the professional services exclusion relieve AMICO from its obligation to defend and indemnify Southern Security in the two Lowndes County lawsuits. For the reasons set forth below, the court finds that coverage is excluded under both provisions and that AMICO has no duty to defend or indemnify Southern Security.

In the instant case, the Olivers and Howard allege that they have suffered mental anguish, resulting from misrepresentations made by Southern Security and its agents.[2] The complaints allege that those misrepresentations occurred in 1986 when Southern Security's agents sold insurance contracts to Howard and the Olivers and subsequently when Howard and the Olivers allege they were induced to purchase new policies in 1991 and 1992, respectively. The court notes that exclusionary clauses are to be narrowly construed and interpreted according to their plain meaning. See Allstate Insurance Co. v. Shofner, 573 So.2d 47 (Fla. 1st DCA 1990). The court also notes, however, that the policy at issue in this case is a commercial liability policy not a professional liability policy. To construe the exclusionary language in this case as Southern Security asks would result in making the AMICO's commercial general liability policy into a professional liability policy.[3] The policy unambiguously states that no coverage is provided for bodily injury or property damage arising from insurance contracts. If there are not ambiguities present, the court must construe an insurance policy according to its plain meaning. Saha v. Aetna Casualty & Surety Co., 427 So.2d 316, 317 (Fla. 5th DCA 1983). The language of this exclusionary clause is unambiguous and cannot logically be read to extend coverage to include liability for occurrences flowing from insurance contracts. Accordingly, the court finds that the liability arising from the sale of insurance contracts in this case is excluded from coverage by paragraph 1 of the comprehensive general liability policy.

2. Mental anguish with physical manifestations is a form of bodily injury cognizable under Florida law. McGuire v. American States Insurance Co., 491 So.2d 606 (Fla. 1st DCA 1986). However, because the court finds that coverage is excluded under paragraphs 1 and 3 of the exclusion provisions, the court makes no finding concerning whether mental anguish constitutes bodily injury under the AMICO policy.

3. Commercial general liability policies serve a purpose distinct from professional liability policies. A commercial general liability policy provides comprehensive coverage to the insured and can cover the provision of general business activity, while a professional liability policy insures members of a profession from liability arising out of a special risk associated with practicing a particular profession. See Carpenter, Weir & Myers v. St. Paul Fire & Marine Ins. Co., 1998 WL 976309 at * 13 (D.Kan.1998).

■ Likewise, coverage is excluded for rendering and failing to render professional services. Southern Security argues that bodily injury suffered by the Olivers and Howard did not result from the performance of professional services by Southern Security or its agents. Therefore, Southern Security argues that the bodily injuries claimed by the Olivers and Howard should be covered under the AMICO contract.

■ The definition of professional services has been subject to wide debate. However, the United States District Court for the Southern District of Florida, construing Florida law, recently adopted the analysis of professional services set forth in *Harad v. Aetna Casualty and Surety Co.*, 839 F.2d 979 (3rd Cir.1988). *Vogelsang v. Allstate Ins. Co.*, 46 F.Supp.2d 1319 (S.D.Fla.1999). The *Harad* court determined that "a professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor skill involved is predominantly mental or intellectual, rather than physical or manual." *Id.* at 984. Additionally, the *Harad* court considered the nature of professional act and the whole policy of insurance. .

In this case, the professional acts performed by Southern Security and its agents were the sale and preparation of insurance policies. In selling the insurance policies to Howard and the Olivers, Southern Security and its agents made representations about the terms and conditions of the insurance contracts—a pursuit which involves professional activity. Furthermore, the damages allegedly suffered by the Olivers and Howard arose directly from the performance of those professional services. If Southern Security and its insurance agents had performed no professional services relative to the sale and marketing of insurance products, the Olivers and Howard would have incurred no injuries. Similarly, if insurance agents did not need to possess some specialized knowledge or skill, the Olivers and How-ard would not have been damaged as a result of Southern Security's alleged failure to train and supervise its agents. Therefore, given that Southern Security and its agents incurred liability in performing or failing to perform professional services, the court finds that coverage for all of the claims raised by Howard and the Olivers are excluded from coverage under the professional services exclusion.

Southern Security also asserts that *Psychiatric Associates v. St. Paul Fire & Marine Insurance*, 647 So.2d 134 (Fla. 1st DCA 1994), is indicative of the restrictive interpretation of professional services exclusion adopted by Florida courts. However, *Psychiatric Associates* is distinguishable from this case. Though the court found in *Psychiatric Associates* that the professional services exclusion did not exclude coverage, the allegations contained in the complaint against the insured in that case did not arise from the performance of professional services. Rather, the complaint arose from an alleged interference by the insured with a contract between a psychiatrist and a hospital. Therefore, while this court declines to follow the holding in *Psychiatric Associates*, the court notes that its decision here is consistent with that opinion. *See also, Alpha Therapeutic Corp., v. St. Paul Fire & Marine Ins. Co.*, 890 F.2d 368 (11th Cir.1989) (professional services exclusion excluded coverage where medical technician made a professional error).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED

1. That the motion for summary judgment filed by AMICO on May 6, 1999 (Doc # 40) be GRANTED; and

2. That the motion for summary judgment filed by Southern Security Life Insurance Company and Sue Ann Gassett on April 7, 1999 (Doc # 41) be DENIED.