765 F.2d 1543
 COMMERCIAL UNION INSURANCE CO., Plaintiff,
Counter-claim-Defendant, Appellant,
v.
SEPCO CORP., Defendant, Counter-claim-Plaintiff, Third-Party
Plaintiff, Appellee,
v.
UNITED NATIONAL INSURANCE CO., et al., Third-Party
Defendants, Appellees.
 No. 84-7523.
 United States Court of Appeals,
Eleventh Circuit.
 July 23, 1985.
 
 Jack B. Hall, Connie Ray Stockham, McDaniel, Hall, Parsons, Conerly & Lusk, Birmingham, Ala., for Commercial Union Ins. Co.
 Jack E. Held, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Susan Mitchell, Birmingham, Ala., for Sepco.
 Huie, Fernambucq & Stewart, John S. Civils, Jr., Eugene D. Martenson, Birmingham, Ala., for The Home Ins. Co.
 C. William Gladden, Jr., Balch, Bingham, Baker, Hawthorne, Birmingham, Ala., for Canadian Universal Ins. Co.
 Frank M. Young, III, North, Haskell, Slaughter, Young & Lewis, James L. Richey, Jonathan H. Waller, Birmingham, Ala., for Mission Ins. Co.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before VANCE and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.
 LEWIS R. MORGAN, Senior Circuit Judge:
 
 
 1
 Sepco Corporation, an Alabama company, manufactured asbestos insulation products between 1970 and 1979. Its general liability insurance coverage during that time and until the filing of this suit consisted of a series of successive policies, each of which was issued by one of several carriers. A defendant in hundreds of recent lawsuits seeking recovery for asbestos-related illnesses, Sepco has called upon these carriers to defend the suits and to pay any resulting liabilities. One of those insurers, Commercial Union Insurance Company, filed this suit, seeking a declaration that it is not obligated to defend or pay any claim based upon an asbestos-related illness that failed to become manifest while a Commercial Union policy was in effect. See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co., 682 F.2d 12, 19-20 (1st Cir.1982), cert. denied, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). Sepco counterclaimed and impleaded the other companies that had provided its primary liability insurance coverage since 1970. These insurers argued before the district court that insurance coverage under a particular policy should be triggered by the exposure of the plaintiff victim to asbestos hazards during the policy period rather than by the manifestation of the subsequent illness during the policy period. Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976, 994 (5th Cir.1985); Porter v. American Optical Corp., 641 F.2d 1128, 1145 (5th Cir.) (approving and adopting Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1226 (6th Cir.1980), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981)), cert. denied, 454 U.S. 1109, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1981). Sepco offered still a third theory: each insurer on the risk at any time between the initial exposure and the manifestation of the disease should be liable to Sepco for indemnification and defense costs. See Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1047 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). Sepco alternatively supported adoption of the exposure theory.
 
 
 2
 On Sepco's motion for partial summary judgment, the district court held that Porter, as binding precedent (see Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc)) dictates that the insurance obligations imposed by the policies issued to Sepco be determined according to the injurious exposure theory. Thus, concluded the court, the costs of defense and settlement incurred in each case filed against Sepco should be prorated among those insurers that provided coverage during the periods of the plaintiff's exposure to asbestos hazards created by Sepco. See Porter, 641 F.2d at 1145. The court subsequently certified the issue pursuant to 28 U.S.C. Sec. 1292(b), and we permitted the appeal. The parties agree that the sole issue before us is whether the district court erred in holding that the injurious exposure theory controls the construction of the insurance policies issued to Sepco.
 
 
 3
 The district court found that all of the policies have the following general coverage provisions in virtually the same or identical language:
 
 
 4
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 
 
 5
 (A) Bodily Injury or,
 
 
 6
 (B) Property Damage
 
 
 7
 to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....
 
 
 8
 The policies define the key terms as follows:
 
 
 9
 "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
 
 
 10
 * * *
 
 
 11
 "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
 
 
 12
 Unfortunately, these provisions are not dispositive of the case before us. See Keene, 667 F.2d at 1041. The District of Columbia Circuit has succinctly stated the problem as follows:
 
 
 13
 The language of each policy at issue in this case clearly provides that an "injury," and not the "occurrence" that causes the injury, must fall within a policy period for it to be covered by the policy. Most suits brought under this type of policy involve an injury and an occurrence that transpired simultaneously, or, at least, in close temporal proximity to one another. In cases involving asbestos-related disease, however, inhalation--the "occurrence" that causes the injury--takes place substantially before the manifestation of the ultimate injury--asbestosis, mesothelioma, or lung cancer. Furthermore, although it is not known how little exposure is required to cause disease, inhalation may occur over a long period of time. As a result, inhalation may continue through numerous policy periods, the disease may develop during subsequent policy periods, and manifestation may occur in yet another policy period. For an insured such as Keene, different insurers are likely to be on the risk at different points in the development of each plaintiff's disease. Moreover, part of the development may occur at a time when no insurer was on the risk. Asbestos-related diseases, which are certainly covered by the policies, therefore differ from most injuries and hence present a difficult problem of contractual interpretation.
 
 
 14
 Id. at 1040. The task before is therefore to determine the point at which a victim of an asbestos-related illness suffers "bodily injury." Cf. United States Fidelity & Guaranty Co. v. Warwick Development Co., 446 So.2d 1021, 1024 (Ala.1984) ("[A]s a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged."). Porter characterized the medical evidence as indicating that each inhalation of asbestos fibers into the victim's lungs is "bodily injury." 641 F.2d at 1144.
 
 
 15
 Commercial Union attempts to distinguish Porter first by arguing that because it was a diversity case in which Louisiana law controlled, it cannot be binding here, where the parties agree that Alabama law controls. The Porter panel assumed for purposes of its decision, however, that the insurance contracts before it were made in Louisiana "or in a state where the law would be the same as that of Louisiana." Porter, 641 F.2d at 1145. The district court noted that Alabama law mirrors that of Louisiana in all relevant respects. This interpretation of local law by the district judge is entitled to deference, see C.H. Leavell & Co. v. Board of Commissioners, 424 F.2d 764, 766 (5th Cir.1970); Insurance Co. of North America v. English, 395 F.2d 854, 860 (5th Cir.1968), and Commercial Union has failed to convince us that it is erroneous. The Porter court based their decision upon the terms of the policies before them. Porter, 641 F.2d at 1145. Those terms, except for an occasionally different placement of the phrase "during the policy period," see id., mimic those in the policies now before us.
 
 
 16
 Commercial Union next contends that the medical evidence in this case, unlike that in Porter, contradicts the essential tenet of the exposure theory, which Commercial Union states to be that "each inhalation of asbestos fibers results in bodily injury." It proffers in support of this contention expert testimony to the effect that not everyone exposed to asbestos contracts an asbestos-related disease such as asbestosis and that exposure to asbestos does not produce instantaneous sub-clinical cellular changes in the lungs. We believe that the exposure theory is more accurately analyzed as positing not that each inhalation of asbestos fibers results in bodily injury, but rather that every asbestos-related injury results from inhalation of asbestos fibers. Because such inhalation can occur only upon exposure to asbestos, and because it is impossible practically to determine the point at which the fibers actually imbed themselves in the victim's lungs, to equate exposure to asbestos with "bodily injury" caused by the inhalation of the asbestos is the "superior interpretation of the contract provisions." Forty-Eight Insulations, 633 F.2d at 1223; see Ducre, 752 F.2d at 992 (Porter characterized as equating "bodily injury" with exposure). The district court correctly held that Porter dictates the adoption of the exposure theory in this case.
 
 
 17
 Finally, Commercial Union argues that the medical evidence at least establishes questions of fact that preclude summary judgment. We agree with the district court that the relevant facts pertaining to asbestos-related disease are not in dispute and that the law to be applied to those facts may be determined on summary judgment.
 
 
 18
 Sepco, although it agrees that Porter is binding, argues that the district court erred in holding that Porter precludes the adoption in this case of the theory established by the District of Columbia Circuit in Keene. The court in that case held that inhalation exposure, exposure in residence, and manifestation all trigger coverage under insurance policies such as those now before us. Keene, 667 F.2d at 1047. This contention is not properly before us because Sepco failed to timely file a petition for permission to appeal. Aparacio v. Swan Lake, 643 F.2d 1109, 1111 & n. 3 (5th Cir.1981). We note, however, that the Sixth Circuit in Forty-Eight Insulations considered and rejected a theory similar to that enunciated in Keene. See Forty-Eight Insulations, 633 F.2d at 1226.
 
 
 19
 AFFIRMED.