Joseph **KOPELOWITZ**, individually and as assignee, Plaintiff,

v.

**HOME INSURANCE COMPANY**, a New Hampshire corporation, Defendant,

and

The **HOME INSURANCE COMPANY**, Third Party Plaintiff,

v.

Robert I. **SHAPIRO**, Third–Party Defendant.

No. 96–248–CIV.

United States District Court, S.D. Florida.

April 15, 1997.

Edward R. Curtis, Curtis & Curtis, Ft. Lauderdale, FL, for Plaintiff and Third–Party Defendant.

Larry I. Gramovot, Shofi, Smith Hennen & Gramovot, PA, Tampa, FL, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (d.e.# 119); AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (d.e.# 74)

ATKINS, Senior District Judge.

THIS MATTER is before the Court on Defendant's and Plaintiff's cross motions for summary judgment. After review of the motions, attached exhibits, applicable responses and replies, and otherwise with a full understanding of relevant law and facts, it is,

ORDERED AND ADJUDGED:

(1) Defendant's *Motion for Summary Judgment* is **DENIED** in its entirety;

(2) Plaintiff's *Motion for Summary Judgment* is **GRANTED** as to Defendant's Third and Seventh Affirmative Defenses in that this Court finds Home breached its duty to defend;

(3) Plaintiff's *Motion for Summary Judgment* is **DENIED** as to Defendant's Fourth and Sixth Affirmative Defenses;

(4) All other remaining issues will be decided at trial. As a result, the parties are hereby directed to file a joint status report delineating all remaining issues, and a new estimated length of trial. A copy of the joint status report shall be delivered to chambers of the undersigned by May 1, 1997.

### FACTS

The following facts are uncontested, and form the basis of this Court's orders.

#### Background: The Loan Transaction

In 1989, Joseph Kopelowitz attempted to lend $800,000 to a company, Rainbow Mills Dyeing and Finishing Inc. ("Rainbow Mills"), for the purchase of certain machinery. Kopelowitz wished to secure the loans with the value of the purchased machinery. To en-sure this, Kopelowitz engaged the services of an attorney, Paul D. Breitner. Breitner was responsible for perfecting Kopelowitz's security interest in the purchased machinery. In early 1990, soon after receiving the loans, Rainbow Mills defaulted on its repayments.

#### Bankruptcy Action

On May 1, 1990, the creditors of Rainbow involuntary petition for relief under Chapter 11, Bankruptcy code. *See In re: Rainbow Mills Dyeing &* 90–12808–BKC–RAM. Kopelowitz, represented by Breitner, filed his proof of claim on June 6, 1990 alleging Rainbow Mills' indebtedness at $827,015.76 plus associated costs. According to filings in the bankruptcy action, Kopelowitz asserted $747,820.95 as secured, and $79,194.81 as unsecured.

Soon thereafter, Rainbow Mills discovered that Kopelowitz's security interest had never been perfected, and that another creditor possessed a superior lien on the machinery in question. As a result, Rainbow Mills filed an adversary complaint against Kopelowitz's claim.

Evidence submitted to the Court reveals that upon receipt of the complaint, Breitner concluded its allegations were correct, and opted not to respond. Rainbow Mills then sought a judgment by default against Kopelowitz's claim. On advice of Breitner, Kopelowitz chose not to oppose the motion, and on February 13, 1992, entered into a joint stipulation for the entry of a "Consent Final Judgment After Default." As part of the judgment, Kopelowitz's claims were deemed unsecured.

#### The State court lawsuit

Kopelowitz, blaming Breitner for the loss of funds, brought suit in state court on June 22, 1993. The five count complaint alleged damages stemming from Breitner's negligence in failing to perfect Kopelowitz's security interest in the Rainbow Mills machinery. At the time of the original complaint, only Breitner was a named Defendant, and no mention was made of any claimed negligence by him in the bankruptcy case.

On March 30, 1994, Kopelowitz served an Amended Complaint, alleging essentially the

same bases for recovery, but adding Breitner's firm, including Robert Shapiro, as Defendants. Again, Kopelowitz's entire claim up to that point rested on allegations of legal malpractice and breaches of fiduciary duty, *all* resulting from Breitner's failures in the original loan transactions.

Then, on October 31, 1994, Kopelowitz served his Third Amended Complaint. In the Third Amended Complaint, Kopelowitz alleged two "new" counts. Counts V and VI of the Third Amended Complaint alleged, for the first time, that Breitner's mishandling of the bankruptcy case was a source of damage to Kopelowitz. Kopelowitz alleged, among other things, that Breitner and his firm failed to:

a. zealously represent Kopelowitz's interests;

b. advise of a law firm conflict of interest;

c. advise Kopelowitz to seek independent legal counsel to evaluate the conduct of Defendants in the course of the loan transactions;

d. inform Kopelowitz of a settlement offer in the bankruptcy case; and

e. counsel Kopelowitz about the settlement offer.

These claimed breaches of fiduciary duty, and lack of fair dealing on the part of Defendants were not alleged prior to service of the Third Amended complaint.

### Home's Insurance Policies

On September 16, 1994, after being named as a Defendant in Kopelowitz's state court case but before being served a copy of the Third Amended complaint, Robert Shapiro applied for a policy of professional liability insurance with Home Insurance Company. Written on a claims made and reported form, policy number LPL–C134363, lists coverage to Shapiro as extending from September 18, 1994—September 18, 1995.

As part of the application, Shapiro was required to answer a series of questions pertaining to the nature of his law practice, as well as disclosing existing or potential claims. Shapiro named only himself as insured, *see Question 5(a),* and listed all claims currently pending against him in response to queries on the form. In particular, in question 11(c), Shapiro was asked the following question:

> **11(c)** During the past 10 years, has any professional claim or suit ever been made against any lawyer named in 5(a) or any lawyer while a member of a predecessor firm?

Shapiro answered "YES" to this question, and pursuant to the form's instructions attached a supplemental claim form detailing the claims. On that form, Shapiro disclosed himself as the sole insured, but also disclosed his entire firm as being named in the claim. Joseph Kopelowitz was named as the claimant, and Shapiro described the claim as follows:

> Firm ... was retained to protect claimants [*sic*] interest with regard to a 300k loan.... The money was to be secured by machinery....

> Rainbow Mills defaulted on the loan and filed for bankruptcy. It was discovered that the Plaintiff did not possess a securiy [*sic*] interest in the machinery because the Defendant had failed to properly perfect the security. It was discovered that a lending institution had a perfected security interest in the machinery before the date of the loan.

> Plaintiff alleges that firm negligently failed to discover the existence of a prior lien on said machinery and further failed to perfect the appropiate [*sic*] security interest. This caused damages in the amount of 300k, plus prejudgment interest, attorneys fees and costs.

*Exhibit* J (attached to Plaintiff's *Motion for Summary Judgment* ).

Shapiro signed and dated the form on September 16, 1994. As a result of Shapiro's disclosure, Home specifically excluded coverage for this claim in its policy, stating:

> In consideration of the premium paid, it is hereby understood and agreed that NO coverage is afforded hereunder for any claim arising out of any circumstances, acts, errors, or omissions identified in Question Number 11C of the application dated 9–16–94.

It is undisputed that all premiums were paid, and the policy was in force at the time Kopelowitz served his Third Amended Complaint. The policy, a Professional Liability Insurance Policy was issued on November 15, 1994, with an effective date of September 18, 1994.[1] The policy included liability coverage as well as defense coverage in the event of lawsuits.

At no time in the application did Shapiro disclose any knowledge of the firm's alleged malpractice in the handling of the bankruptcy case.

### The Settlement

Although Shapiro was served with the Third Amended Complaint on December 31, 1994, Home was not notified of the claim concerning negligence in the bankruptcy proceeding, until May 1, 1995. On May 15, 1995, Home denied coverage and a defense to Shapiro finding the claim excluded under the terms of the policy.

As a result of Home's refusal to defend Shapiro against Kopelowitz's claim, Shapiro and the other Defendants settled. The terms of the settlement included, among other provisions, an admission of liability by all Defendants as to negligence in the bankruptcy proceeding, without any admission of negligence in the handling of the loan transactions. The Court approved the settlement, and awarded Kopelowitz $956,093.84 and an assignment of rights to proceed against Shapiro's insurer for satisfaction of the judgment.

### This Lawsuit

Kopelowitz filed the current lawsuit, under his assignment of rights from Shapiro, against Home to recover the judgment entered in the state lawsuit. As grounds for recovery, Kopelowitz claims that Home breached its duty to defend Shapiro by not entering into the state lawsuit, and as a result, is liable for the full amount of the judgment.

Home has, of course, denied any breach, and instead has asserted a number of defenses to Kopelowitz's claims of coverage. Both sides now move for summary judgment. The motions are fully ripe and ready for adjudication.

### STANDARD OF REVIEW

#### Summary Judgment

Both parties now move under Federal Rule of Civil Procedure 56, for summary judgment against one another on various grounds. Under Federal Rule of Civil Procedure 56, a party is entitled to judgment as a matter of law if there is no genuine issue as to any material fact. *Fed.R.Civ.P.* 56(c). First, the moving party bears the burden of identifying the portions of the record, including pleadings, depositions, admissions, answers to interrogatories, and affidavits, which demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992). Once the moving party meets this burden, it is the responsibility of the non-moving party to "go beyond the pleadings" by filing affidavits, depositions, answers to interrogatories, or admissions and pointing to specific facts which show there is a genuine issue of material fact. *Tipton*, 965 F.2d at 998.

In reviewing a motion for summary judgment, the court must consider all the evidence in the light most favorable to the non-movant. *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). If the record presents factual issues, the court must not decide them; it must deny the motion

---

1. Defendant Home alleges that "Shapiro executed the application for insurance on September 16, 1994, and on November 14, 1994, signed a specific claim exclusion endorsement, *which was more than two weeks after* Kopelowitz served his Third Amended Complaint. . . ." Home's *Motion for Summary Judgment* at 6 (emphasis added). Although this is factually correct, Home's insinuation that Shapiro's signature on November 14 affects his right to assert coverage for actions arising on October 31, 1994 is not. As the *Endorsement* clearly states, the effective date of the policy is September 18, 1994, and thus subsequent claims need not be disclosed. Indeed, the specific language of the *Endorsement* excludes any claims arising before September 16, 1994, without mention of claims accruing after.

Whether coverage may exist for those claims is a separate question from that addressed in this footnote.

and proceed to trial. *Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982). Finally, "summary judgment may be improper even though the basic facts are undisputed if the parties disagree regarding the material factual inferences that properly may be drawn from these facts." *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969).

### Contract (Insurance) Interpretation in Florida:

█ This case is a diversity action and Florida substantive law governs this Court's interpretation of the insurance contract. *Fioretti v. Massachusetts Gen. Life Ins. Co.,* 53 F.3d 1228 (11th Cir.1995). Under Florida law, any interpretation of contract terms must be viewed in light of the entire document. *Prudential Property & Casualty Ins. Co. v. Bonnema,* 601 So.2d 269 (Fla. 5th DCA 1992).

█ Under Florida and federal law, a court must construe ambiguities in an insurance contract in favor of providing maximum coverage to the insured. *Dyer v. Nationwide Mutual Fire Insurance Co.,* 276 So.2d 6, 8 (Fla.1973); *Rigel v. National Casualty Co.,* 76 So.2d 285, 286 (Fla.1954); *Gulf Tampa Drydock Co. v. Great Atlantic Insurance Co.,* 757 F.2d 1172, 1174 (11th Cir.1985). As a result, the Court will interpret terms in favor of the non-drafting party, and any ambiguities in the policy will be resolved in favor of the insured. *Dahl–Eimers v. Mutual of Omaha Life Insurance Co.,* 986 F.2d 1379 (11th Cir.1993); *Prudential Prop. & Cas. Ins. Co. v. Swindal,* 622 So.2d 467 (Fla. 1993). However, when the language of the policy is clear and unambiguous, there is no need for judicial construction and the contract must be enforced as written. *Great Global Assurance Co. v. Shoemaker,* 599 So.2d 1036 (Fla. 4th DCA 1992).

█ Failure to provide a definition for a term used in a policy does not necessarily render that term ambiguous. *State Farm Fire and Casualty Co. v. Metropolitan Dade County,* 639 So.2d 63 (Fla. 3d DCA 1994). "Just because insurance contracts are complex instruments, the fact that analysis is required for one fully to comprehend them, does not mean the contracts are ambiguous." *State Farm Fire and Casualty Co. v. Oliveras,* 441 So.2d 175, 178 (Fla. 4th DCA 1983). Although it is axiomatic that exclusionary clauses are construed more strictly than coverage clauses in insurance contracts, *see Indiana Ins. Co. v. Miguelarcaina,* 648 So.2d 821 (Fla. 3d DCA 1995); *Florida Farm Bureau Ins. Co. v. Birge,* 659 So.2d 310 (Fla. 2d DCA 1994), where the exclusion is clearly stated and unambiguous, it will be enforced as written. *Hawk Termite & Pest Control, Inc. v. Old Republic Insurance Co.,* 596 So.2d 96 (Fla. 3d DCA 1992).

### Duty to Defend

█ Even with an understanding of the above standards of law, the Court is aware it is not confronted with an "ordinary" coverage case. As stated earlier, Kopelowitz's claim is predicated on an allegation of Home's breach of its duty to defend. A breach of an insurer's duty to defend may be found even in cases where coverage does not exist. "The law is clear that the duty to defend is broader than the duty to provide coverage. . . ." *Id.* at 1115.; *Smith v. General Accident Ins. Co. of America,* 641 So.2d 123, 123 (Fla. 4th DCA 1994); *Morgan Int'l Realty, Inc. v. Dade Underwriters Ins. Agency, Inc.,* 617 So.2d 455, 458 (Fla. 3d DCA 1993). Further, "any doubt about the duty to defend must be resolved in favor of the insured." *MCO Environmental, Inc. v. Agricultural Excess & Surplus Insurance Company,* 689 So.2d 1114, 1115 (Fla. 3d DCA 1997). *See also Marr Investments, Inc. v. Greco,* 621 So.2d 447, 449 (Fla. 4th DCA 1993).

█ The duty to defend is solely determined by the allegations in the Complaint, whether or not those allegations are later revealed false, or seem fraudulent even on their face. *Smith, supra; St. Paul Fire and Marine Insurance v. Icard et al.,* 196 So.2d 219 (Fla. 2d DCA 1967). "The duty to defend is to be determined from the allegations in the complaint against the insured." *Grissom v. Commercial Union Ins. Co.,* 610 So.2d 1299, 1307 (Fla. 1st DCA 1992). *See also Irvine v. Prudential Property and Casualty Insurance Co.,* 630 So.2d 579 (Fla. 3rd

DCA 1993). In the end, "so long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit." *Grissom,* 610 So.2d at 1306. In other words, it does not matter whether, in fact, coverage actually exists in this case. If facts are sufficiently plead, and as here the insurer refused to defend, the Court must declare a breach of the insurer's duty to defend, and find for Plaintiff on this issue.

Further, in looking to the complaint to determine a duty to defend, it is not necessary for every allegation to be covered. "If the complaint alleges facts that could bring the insured partially within coverage of the policy, the insurer is obligated to defend the entire suit." *MCO Environmental,* at 1116. *See also St. Paul,* 196 So.2d at 222. "If it later becomes apparent (such as in an amended complaint) that claims not originally within the scope of the pleadings are being made, which are now within coverage, the insurer upon notification would become obligated to defend." *Grissom,* 610 So.2d at 1307; *Broward Marine, Inc. v. Aetna Insurance Co.,* 459 So.2d 330 (Fla. 4th DCA 1984).

It is undisputed by both parties that "if an insurance company breaches its contractual duty to defend, the insured can take control of the case, settle it, and then sue the insurance company for the damages incurred in settling the action." *MCO Environmental,* 689 So.2d at 1116. In this case, the insured has assigned his rights to a third-party, and that party is seeking recovery from the insurer. Such suits are common and accepted in Florida. *See e.g., Steil v. Florida Physicians' Insurance Reciprocal,* 448 So.2d 589, 592 (Fla. 2d DCA 1984).

Nonetheless, "Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy. This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action." *Spencer v. Assurance Co. of America,* 39 F.3d 1146, 1149 (11th Cir.1994); *Steil v. Florida Physicians' Insurance Reciprocal,* 448 So.2d 589, 592 (Fla. 2d DCA 1984). "A determination of coverage, therefore, is a condition precedent to any recovery against an insurer." *Spencer,* 39 F.3d at 1146.[2]

### Home's Duty to Defend

The policy in question was in force when the Third Amended Complaint was served, and Home was notified of the claim during the policy period. " 'Claims-made' policies, as opposed to 'occurrence' policies, trigger coverage 'if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term.' " *United States Fire Insurance Co. v. Fleekop,* 682 So.2d 620, 622 (Fla. 3rd DCA 1996) (quoting *Gulf Insurance Co. v. Dolan, Fertig & Curtis,* 433 So.2d 512, 514 (Fla.1983)). The Third Amended Complaint was served on Shapiro during the policy period, and Shapiro subsequently filed a notice of claim with Home prior to expiration. All that remains is to determine if the asserted claims triggered Home's duty to defend, and if so, whether coverage exists.

Thus, the first question the Court must determine is whether Home breached its duty to defend. Only if Home is found to have so breached will the Court then turn to the issue of coverage.[3] The above discussion

---

**2.** Ordinarily, a finding of liability on the part of Home also requires a determination that "the settlement was reasonable and made in good faith." *Spencer v. Assurance Co. of America,* 1993 WL 761408, * 5 (N.D.Fla.1993). However, in this case, pursuant to a *Joint Stipulation* filed by the parties on October 17, 1996, Home's objections to the "reasonableness" of the settlement are waived pursuant to a dismissal of Home's *Second Affirmative Defense.* Instead, Home has chosen to seek complete recision of the policy as it pertains to Shapiro.

**3.** The Court notes a certain inconsistency in the logic of Florida cases dealing with · insurer

breaches of duty to defend clauses. Under prevailing Florida law, an insurer's failure to honor its duty to defend the insured results only in estoppel of later relitigation of factual and legal issues necessarily determined in the prior case. *See generally Columbia Casualty Co. v. Hare,* 116 Fla. 29, 156 So. 370 (1934); *Spencer,* 39 F.3d at 1148. However, the insured, on finding that the insurer will not defend, often settles. In such instances, the insurance company is not estopped from relitigating *any issues as no trial was ever held.* As a result, even where an insurer is found to have unjustifiably breached a duty to defend, it suffers no later penalty from that breach. Such a policy seems incongruous given Florida's gen-

of applicable law reveals, however, that issues of coverage and duty to defend often overlap. That is the case here. Here, Home denies it had a duty to defend based on its view that Kopelowitz's claims are excluded by applicable policy provisions. To this end, Home asserted four (4) affirmative defenses [4] all intended to demonstrate that Shapiro was not covered for this claim, and therefore, Home had no duty to defend. This Court finds that of the four affirmative defenses, (the Third, Fourth, Sixth and Seventh Affirmative Defenses as seen in the Second Amended Answer), two (the Third and Seventh) go directly to the issue of Home's duty to defend.

According to Home's asserted Third and Seventh Affirmative Defenses, acts "related" to the firm's negligence in the loan transactions are excluded from coverage. Kopelowitz agrees with Home's position, but disagrees as to what "related" means. Nonetheless, according to Home, no duty to defend exists in this case because, on the face of the complaint, the acts alleged in Counts V & VI, are "related" to the loan transactions and, therefore, the refusal to defend is supported by a bare reading of the Third Amended Complaint. Thus, these two defenses, if found correct, do not implicate matters outside of the complaint, and Home's refusal to defend may be proper.

The remaining affirmative defenses, (Fourth and Sixth) allege that Shapiro either intentionally or negligently failed to disclose on his application, knowledge of a potential suit by Kopelowitz for the firm's handling of the bankruptcy case. These two defenses require the Court to go beyond the mere allegations of the Third Amended Complaint. As such, they may not be raised by Home as a bar to a finding that it breached its duty to defend. These defenses go to the issue of

whether or not there is coverage, even in the face of an unjustified breach of its duty to defend.

### Home's Third and Seventh Affirmative Defenses

Kopelowitz urges the Court to find the Third Amended Complaint alleged sufficient non-excluded claims against Shapiro to trigger Home's duty to defend. Kopelowitz points to the "new" counts in the complaint, alleging the firm's negligence and breaches of fiduciary duties during the conduct of the bankruptcy case.

■ According to applicable policy language:

> [T]he Company shall defend any claim against the Insured including the appeal thereof seeking damages to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent....

*Home Policy,* at 2. The Third Amended Complaint has certainly alleged a "claim against the Insured ... seeking damages to which this insurance applies...." *Id.* The insurance policy is one for professional liability, including negligence or breaches of fiduciary duty to clients. *See Home Professional Liability Insurance Policy,* ¶ II, at p. 2. On its face, the Third Amended Complaint contains sufficient allegations to form a covered claim under Home's policy. It is only if Home's Third and Seventh Affirmative Defenses are legally sufficient, that Home's refusal may be justified.

■ As stated before, Home refused to defend Shapiro on the basis of its determination that no coverage exists for Kopelowitz's claims. Home's Third Affirmative Defense relies on the multiple claims clause of the policy. That clause states:

eral legal preference that insurers must honor defense clauses.

The Court also notes the Eleventh Circuit has recently certified a question to the Supreme Court of Georgia regarding very similar issues, despite the past "settled" nature of analogous doctrines. *See Colonial Oil Industries, Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671,* 106 F.3d 960 (11th Cir.1997).

In the end, however, the Court finds Florida law clear on this point, and obviously will follow the doctrines despite the above referenced misgivings.

4. All other affirmative defenses contained in Home's *Second Amended Answer and Counterclaim* have been voluntarily dismissed. *See Joint Stipulation* (d.e.# 75).

## IV. Multiple Insureds, Claims and Claimants

> Related acts, errors or omissions shall be treated as a single claim. All such claims, whenever made, shall be considered first made during the policy period or optional reporting period in which the earliest claim arising out of such act, error or omission was first made

Home argues that the negligence in the bankruptcy case is a "related" act to the excluded negligence in the loan transactions. Not surprisingly, Kopelowitz disagrees and urges the Court to find, the firm's actions in the bankruptcy case unrelated to its actions in the loan transactions.

The parties have expended considerable energy arguing about the appropriate legal standard for determining what are or are not "related acts." Unfortunately, both Home and Kopelowitz seem to miss the point. The extended discussions they offer are all related to an understanding that the "negligence" alleged in the Third Amended Complaint pertaining to the bankruptcy case involves difficulties in asserting Kopelowitz's secured claim. Home argues that such negligence is causally related to the excluded negligence in the loan transactions. Kopelowitz, meanwhile, attempts to argue that as the negligence in the bankruptcy case is admitted (via settlement), then, as a matter of fact, there can be no negligence in the loan transactions. Thus, the two allegations of negligence are not causally related, and the claims arising out of the bankruptcy case are covered.

As discussed above, the question is not whether all allegations in the Third Amended Complaint must be covered claims. Further, it is the *allegations* of the Third Amended Complaint that govern, not the interpretations of the parties or even the underlying facts which may or may not support those allegations. In the end, the Court finds that the Third Amended Complaint contains sufficient allegations to raise a wholly separate claim against Shapiro.

Specifically, Kopelowitz alleges in the Third Amended Complaint that the firm, and hence Shapiro, breached its fiduciary duty to faithfully represent Kopelowitz's interests in the bankruptcy case. Home's policy considers fiduciary duties as covered professional duties. *See Home Professional Liability Insurance Policy, § II*, at p. 2.

The Third Amended Complaint alleges, among other things, that Shapiro (through Breitner) negligently failed to inform Kopelowitz of a settlement offer. This is a separate cause of action from the claims underlying the loan transaction. For instance, if there was *no* negligence in the handling of the loans, there could still be an action for failure to inform Plaintiff of the settlement offer. Further, if there *was* negligence in the loan transaction, failure to inform Plaintiff of possible settlement offers is a separate act of negligence, with distinct facts and possible damages from an act resulting from the failure to perfect the security interest. It is difficult for the Court to discern a more clear-cut example of an "independent" cause of action sufficient to defeat, without further inquiry into the factual bases for the allegation, the multiple causes exclusion of the Home insurance policy.

Kopelowitz's claims of negligent representation are unrelated to any claimed or real negligence concerning the perfecting of Kopelowitz's security interests in either the loan transactions or in the bankruptcy case. As such, the multiple claims exclusion does not apply, and Plaintiff's motion for summary judgment as to Home's Third Affirmative Defense is **GRANTED**. Conversely, Defendant's motion is **DENIED** as to this same defense.

Home's Seventh Affirmative Defense attempts to bar coverage for Shapiro on the basis of the following language.

> In consideration of the premium paid, it is hereby understood and agreed that NO coverage is afforded hereunder for any claim arising out of any circumstances, acts, errors, or omissions identified in Question Number 11(c) of the application dated 9–16–94.

In the answer to Question 11(c), Shapiro disclosed Kopelowitz's pending lawsuit, and described the circumstances giving rise to the suit as follows:

> Rainbow Mills defaulted on the loan and filed for bankruptcy. It was discovered

that the Plaintiff did not possess a security interest in the machinery because the Defendant had failed to properly perfect the security. It was discovered that a lending institution had a perfected security interest in the machinery before the date of the loan.

▮ As in the section discussed above concerning Home's Third Affirmative Defense, Home argues that the allegations of negligence in the loan transactions (Counts I—IV) form the factual predicates for Breitner's alleged negligence in the bankruptcy proceeding (Counts V & VI). For the same reasons as discussed above, the Court rejects Home's arguments.

It is possible that, in fact, the essence of Plaintiff's claim against Shapiro arises out of the negligence in the loan transactions. However, as discussed before, Kopelowitz's Third Amended Complaint also contains allegations of Breitner's and Shapiro's alleged breaches of fiduciary duty. The allegations include claims of undisclosed conflict of interest, withholding of information pertaining to a settlement offer, and even failure to adequately counsel Kopelowitz on matters pertaining directly to the conduct of the bankruptcy proceeding, without any reference to claimed negligence in the loans. Indeed, a reading of Counts V and VI reveals no mention, or incorporation of any of the counts relating to the failure to perfect the security interest. As a result, Plaintiff's *Motion for Summary Judgment* as it pertains to Home's Seventh Affirmative Defense is **GRANTED;** Defendant's motion is **DENIED.**

As a result of the foregoing, the Court finds that Home has breached its duty to defend Shapiro under the policy. What remains is for the Court to determine whether, in terms of Home's Fourth and Sixth Affirmative Defenses, coverage exists.

### Home's Fourth and Sixth Affirmative Defenses

Given that Kopelowitz's claim against Shapiro occurred prior to the policy period, and was not reported to Home by Shapiro on his application, it is only covered if:

(2) [Shapiro] had no reasonable basis to believe that [he] had breached a profes-

sional duty or to foresee that a claim would be made against [him.]

*Home Policy, Section B*—"Coverage", at 1. Put simply, Home's policy excludes coverage for undisclosed acts or occurrences arising prior to issuance of the policy if those claims were foreseeable or reasonably discoverable by the insured at the time of application.

Home presents two (2) arguments in support of its determination that this exclusion applies. First, Home points to certain evidence that Shapiro was notified by Kopelowitz as early as 1991, that he was unhappy with Breitner's representation in the bankruptcy case. Second, Home looks to certain Florida law on partnerships that imputes the knowledge of one partner to all partners, in an attempt to argue that Breitner's knowledge of his own negligence is imputed to Shapiro.

▮ The analysis the Court must use is whether the claim for negligence in the bankruptcy proceeding was foreseeable by Shapiro at the time he filled out his application on September 16, 1994. For obvious reasons, this determination is a factual one. Were all the evidence to point to one side, this Court may be able to determine that Shapiro withheld information on his application, thereby vitiating coverage. However, as the record now stands, this issue presents a genuine issue of material fact incapable of solution in the context of a motion for summary judgment.

Home has produced almost no evidence that Shapiro should have known of the possibility of the bankruptcy action prior to being served with the Third Amended Complaint. The sole piece of evidence presented is an excerpt from Kopelowitz's deposition containing an alleged admission. Home claims that Kopelowitz admitted discussing with Shapiro his unhappiness with Breitner's representation in the bankruptcy case prior to 1994. According to the transcript:

Q. Mr. Kopelowitz, did you ever discuss your bankruptcy case with Paul Breitner's partner, a man named Shapiro?

A. I think we did.

Q. And approximately when did you that I [*sic*] have discussion with Mr. Shapiro, about how long ago?

\* \* \* \* \* \*

A. If you ask me the date, I'm not sure.

Q. Okay. But it was while the bankruptcy case was still going on; right?

A. Maybe before or maybe while it was in progress, I'm not sure.

Ignoring the obviously leading nature of the question eliciting the above response, it is impossible to find that Kopelowitz's assertion is sufficient to prove Shapiro's knowledge of the potential claim. Subsequent depositions of Shapiro contain unequivocal declarations that *no* conversation ever occurred between Kopelowitz and him on *any* matter relevant to this case. As Shapiro's knowledge controls, his testimony that *no* conversation ever occurred trumps whatever weight Kopelowitz's testimony may give to Home's position. In the end, the evidence points most strongly to a finding that Shapiro did *not* know of Kopelowitz's unhappiness. Whatever evidence has been proffered, there is no question that a genuine issue of material fact exists and must be determined at trial by the trier of fact.

Home also argues that under Florida law, it doesn't matter that Shapiro knew of the potential claim, only that someone in his firm was aware. According to Home, even if Shapiro had no knowledge, Breitner must surely have been aware of his own negligence, and Breitner's knowledge is imputed to Shapiro under Florida law. *See Fla. Stat. Ann.* § 620.615.:

■ To begin, the Court notes Home has not produced a single case holding that Fla. Stat. Ann. § 620.615 stands for the proposition so advanced. Indeed, it seems illogical to argue that knowledge of one partner may be imputed to another for purposes of requiring *disclosure* of such imputed knowledge. *Cf. First American Title Insurance Company v. Kessler,* 452 So.2d 35, n. 6 (Fla. 3d DCA 1984). Certainly, Florida law holds innocent partners liable for acts of other partners through the concept of imputed knowledge. Application of the concept of imputed knowledge forms the basis of this entire litigation. Nonetheless, this Court will not extend § 620.615 to require that *imputed* knowledge must be disclosed.

Finally, even if Home's argument could be accepted, no evidence has been produced showing that even Breitner anticipated a claim for negligent representation in the bankruptcy case. The only evidence before the Court on this issue is Breitner's testimony that until served with the Third Amended Complaint, he believed his representation in the bankruptcy case was adequate. Thus, even if the Court imputed Breitner's knowledge to Shapiro, it is unclear what knowledge Home would have the Court impute. For all the above reasons, the issue of Shapiro's knowledge·must be decided at trial.

■ Home also claims that Shapiro's policy is void because of an alleged material misrepresentation on his application. Under applicable Florida law, if such a material misrepresentation was made the contract is void. *See* Fla.Stat.Ann. § 627.409 (1996). Even non-intentional misstatements in an application may void a policy of insurance issued in Florida. *Continental Assurance Co. v. Carroll,* 485 So.2d 406 (Fla.1986).

Home contends that Shapiro's misstatement occurred in his answer to question 11(d) on the application. Question 11(d) asks the following:

**11 (d).** Does any lawyer named in Question 5(a) know of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, the firm or its predecessors?

Shapiro answered this question "NO." According to Home, Shapiro should have marked "YES" for two reasons. First, Shapiro must have known that Breitner knew that Kopelowitz might file a claim based on the firm's representation in the bankruptcy matter. Second, Home contends that, as was discussed in the previous section, Shapiro *did* know of Kopelowitz's dissatisfaction with Breitner pursuant to Kopelowitz's admission of such a discussion at his deposition.

■ As to the second argument, the Court readopts the same findings as dis-

cussed above, and rules Shapiro's knowledge an issue to be determined at trial. As to Home's first contention, the Court finds it without merit.

To start, for the same reasons as discussed above, the Court cannot foresee how an insured is required to disclose knowledge of acts he only has through the fiction of imputation. Therefore, the mere fact that *Breitner* may have known of the pending claim cannot void the policy.

Of more importance, however, is the fact that Home's own phrasing of Question 11(d) precludes this argument. Question 11(d) specifically directs the applicant to consider only those lawyers specified in Question 5(a). The only lawyer listed in Question 5(a) is Robert I. Shapiro. Therefore, there is no basis for finding that Mr. Shapiro had to disclose the knowledge, or possible knowledge (however difficult that may be) of other non-listed attorneys. Question 11(d) specifically directs the applicant to limit disclosure to the knowledge of those listed in 5(a). Home, in drafting the policy, chose not to include more expansive language, such as that in Question 11(c). In 11(c), Home directs the applicant to disclose the knowledge of "any lawyer named in 5(a) or any lawyer while a member of a predecessor firm." This expansive language is conspicuous by its absence in Question 11(d), and Shapiro may not be held responsible for Home's drafting of the question. As Breitner was not listed in 5(a), there was no requirement under the terms of the policy that Shapiro disclose Breitner's possible knowledge.

Insofar as a question still remains, as discussed above, concerning Shapiro's knowledge of Kopelowitz's potential claim against Breitner and the firm, Plaintiff's *Motion for Summary Judgment* as to the Seventh Affirmative Defense is **DENIED.** For the same reasons, Defendant's similar motion is also **DENIED.**