**AMERICAN MOTORISTS INSURANCE COMPANY,**
Plaintiff,

v.

**SOUTHERN SECURITY LIFE IN-SURANCE COMPANY, Defen-dant/Counterclaim Plaintiff,**

v.

**American Motorists Insurance Company and United States Fidelity and Guaranty Company, Counterclaim Defendants.**

No. Civ.A. 98–C–960–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 6, 2000.

See also 2000 WL 52466.

H.E. Nix, Jr., Steven A. Higgins, Nix., Holtsford, Gilliland, Lyons & Higgins, PC, Montgomery, AL for plaintiff.

Don B. Long, Jr., Andrew D. Block, Johnston, Barton, Proctor & Powell, Birmingham, AL, for Southern Sec. Life Ins. Co.,Sue Anne Gassett, defendants.

Gregory S. Ritchey, Ritchey & Ritchey, Birmingham, AL, for Christopher Bennett, Elois D. Bennett, defendants.

Elizabeth Ann McMahan, Spain & Gillon, Birmingham, AL, for U.S. Fidelity & Guaranty Co., defendant.

## MEMORANDUM OPINION AND ORDER

CARROLL, United States Magistrate Judge.

## I. PROCEDURAL HISTORY AND FACTS

American Motorists Insurance Company filed a complaint for declaratory judgment on August 26, 1998 seeking a declaration that it owed neither a defense or indemnity to the defendants, Southern Security, Sue Ann Gassett, Christopher Bennett and Elois Bennett, in two lawsuits filed in the Circuit Court of Lowndes County, Alabama, by Eva Mae Howard and by Willie Mae Oliver and Eugene Oliver, Jr. The Howard complaint alleges that the defendants made misrepresentations to Howard on August 12, 1986 and on September 1, 1991 relative to her purchase of a whole life insurance policy and when the policy would be paid up. Howard alleges that when she learned that the policy she purchased would not be paid up in August of 1996, she suffered metal anguish and continues to do so. The Olivers allege that they have suffered mental anguish and continue to do so as a result of similar misrepresentations made to them by the defendants. AMICO defended Southern Security in the two suits under a strict reservation of rights and USF & G denied coverage. On September 29, 1998, Southern Security filed an answer and a counterclaim in this declaratory action against AMICO and USF & G alleging that USF & G's insurance policy requires USF & G to defend and indemnify it in the two Lowndes County suits. The Lowndes County lawsuits were filed on April 23, 1996. AMICO insured Southern Security from August 1, 1996 to August 1, 1997. USF & G provided coverage from August 1, 1997 to August 1, 1998. Southern Security settled the Lowndes County lawsuits on August 31, 1999 and has amended its complaint to seek indemnification from AMICO and USF & G for portions of the amounts Southern Security paid to settle the Lowndes County lawsuits.

This matter is before the court on USF & G's motion for summary judgment and Southern Security's cross-motion for summary judgment. For the reasons which follow, the court finds that USF & G is entitled to summary judgment.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exists genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a

matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears the "exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); see also *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. DISCUSSION

### A. CHOICE OF LAWS

■ Both USF & G and Southern Security allege that Florida law applies to the interpretation of the insurance contract in this case. Because federal courts apply the substantive law of the states in which they sit, the court must apply the Alabama conflict of law rules. In the context of insurance cases, the court is obliged to apply the laws of the state where the last act is "receipt and acceptance" of the insurance policy. *Brown Machine Works & Supply, Inc. v. Insurance Co. of North America, Inc.,* 951 F.Supp. 988 (M.D.Ala.1996). In

the instant case, the last act and receipt and acceptance of the insurance policy took place in Florida, where Southern Security has its principal place of business. Therefore, this court must apply Florida law with respect to the USF & G insurance contract.

### B. INSURANCE CONTRACT INTERPRETATION

■ According to Florida law, whether an insurer has a duty to defend its insured is determined by allegations in the complaint. *Kopelowitz v. Home Insurance Co.,* 977 F.Supp. 1179, 1185 (S.D.Fla.1997). Therefore, if the allegations contained in the underlying complaint accuse the insured of actions sufficient to invoke coverage under the insurer's policy of insurance, the insurer must defend and indemnify. *Id.* If, however, based on the allegations of the complaint and the language contained in its insurance policy, USF & G can establish as a matter of law that there is no possible legal or factual premise on which it could be obligated to indemnify Southern Security, it will not have a duty to defend. *Allstate Insurance Co. v. Zuk,* 78 N.Y.2d 41, 571 N.Y.S.2d 429, 431, 574 N.E.2d 1035 (1991). The court also recognizes that insurance contracts must be construed liberally in favor of the insured and strictly against the insurer. *New Amsterdam Casualty Co., v. Addison,* 169 So.2d 877 (Fla. 2d. DCA 1964).

In the instant case, both Howard and the Oliver complaint allege that Southern Security and its agents made misrepresentations concerning when insurance policies that they purchased would be paid up. As a result, the Howard and Oliver plaintiffs allege, when they discovered that they had been defrauded in 1996, they began suffering and have continued to suffer mental anguish. In addition, Howard and the Olivers allege that they suffered economic loss as a result of the misrepresentations.[1]

---

1. The complaints further allege intentional misrepresentation with respect to the sale of an insurance policy, suppression of a material fact during the sale of an insurance policy, innocent, reckless, negligent or wanton misrepresentation and/or concealment with respect to material facts relating to the terms of the insurance policy, negligent and wanton hiring, training of Southern Security's agents

Howard and the Olivers stated in answers to interrogatories that they have suffered physical manifestations of mental anguish such as sleeplessness, stomach cramps, headaches and the like.

As noted previously, USF & G provided liability and umbrella insurance overage to Southern Security from August 1, 1997, through August 1, 1998. The Commercial General Liability and Commercial Umbrella Liability policy are an occurrence policy [2] that covered bodily injury and property damage for a covered occurrence. In pertinent part, the policy stated:

Section I—Coverages

Coverage A. Bodily Injury and Property Damages Liability

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

b. This insurance applies to "bodily injury" and "property damage" only if:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory; and

2. The "bodily injury" or "property damage" occurs during the policy period.

The USF & G policy also contained certain definitions of bodily injury and occurrence. Bodily injury was defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Occurrence was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

USF & G acknowledges that Howard and the Olivers have alleged mental anguish, a sufficient allegation to invoke coverage under the bodily injury provision.[3]

However, USF & G interprets the foregoing policy language to require an occurrence during the policy period before there is coverage. Further, USF & G argues that there could be no bodily injury within the meaning of the policy before the mental anguish first manifested itself, coincident to the discovery of the fraud in 1996. Coverage under the USF & G policy did not begin until August 1997. Therefore, USF & G contends that there was no coverage under its policy because there was no "occurrence" during the term of its policy. Conversely, Southern Security contends that because Howard and the Olivers suffered physical manifestations of mental anguish, their injuries are a continuing injuries which continued into the USF & G policy period.

■ In Florida, a plaintiff's mental anguish which results in physical manifestations may constitute bodily injury. *McGuire v. American States Insurance Co.*, 491 So.2d 606 ( Fla.Dist.Ct.App.1986). The court finds that the allegations contained in Howard and the Olivers' complaint are sufficient to constitute an occurrence and that their alleged damages meet the definition of "bodily injury." However, under the terms of the policy, USF & G does not have a duty to indemnify Southern Security unless there was bodily injury or property damage which occurred between August 1997 and August 1998. The questions before the court therefore is whether the mental anguish alleged by Howard and the Olivers occurred during the USF & G policy period.

■ Clearly, the misrepresentations which caused the mental anguish predated the USF & G policy. Both Howard and the Olivers contend that Southern and its agents made misrepresentations concerning their respective insurance policies beginning in 1986. Howard alleges a second

and civil conspiracy to defraud Howard and the Olivers.

2. Occurrence policies cover liability inducing events occurring during the policy term.

3. This concession is based on Alabama law but the court finds that the Alabama law and Florida law on this point is essentially the same.

misrepresentation in 1991 and the Olivers in 1992. Howard and Olivers allege that they discovered that their insurance policies would not be paid up until 1996, one year before the inception of the USF & G policy. In 1996, Howard and the Olivers allege that they began experiencing mental anguish with physical manifestations, as a result of the discovery of the alleged fraud. The facts suggest, therefore, that there was one proximate cause which resulted in all of the injuries to Howard and the Olivers and the resulting bodily injury first occurred in 1996.

■ Southern Security contends that because Howard and the Olivers suffered physical manifestations from mental anguish which continued into the USF & G policy period, USF & G has a duty to indemnify. However, that position is inconsistent with the current state of the law in Florida. Though the allegations of the complaint state that the mental anguish suffered by the plaintiffs continued beyond 1996, Florida courts follow the general rule that the time of occurrence within the meaning of an indemnity policy is the time at which the plaintiff's injury first manifests. *See Travelers Insurance Co., v. C.J. Gayfers & Co.,* 366 So.2d 1199, 1202 (Fla. App.1979) (court found plaintiff's damage occurred when faulty roof drainage system finally leaked). The Florida courts have also stated that bodily injury or other identifiable event must occur during the policy period. *Aetna Insurance Co. v. State Farm Fire & Casualty Co.,* 457 So.2d 512, 513 (Fla.App.1984). The injuries to Howard and the Olivers manifested in 1996 when they discovered the fraud so that there was no occurrence between August 1997 and August 1998.

Southern Security further argues that the decision in *Commercial Union Ins. Co. v. Sepco,* 765 F.2d 1543 (11th Cir.1985), an asbestos case, constitutes authority for its contention that exposure is the appropriate theory on which to evaluate the Howard and Oliver allegations. In declining to apply the exposure theory in this case, the court notes that an exposure theory is

inapposite where it is possible to determine exactly when bodily injury begins. Unlike the asbestos cases where plaintiffs were exposed several times over a number of years, the mental anguish suffered by Howard and the Olivers had a discrete cause and beginning, the discovery of alleged fraud in 1996.

Even construing the insurance contract liberally in favor of Southern Security, as the court must, the court finds that the bodily injuries claimed by Howard and the Olivers were caused by misrepresentations allegedly made beginning in 1986 and discovered in 1996. The USF & G unambiguously states that bodily injury or property damage must occur during the policy period. It would require this court to undertake a tortured construction of the USF & G policy to extend coverage for occurrences that happened before the inception of the USF & G policy. Accordingly, given that the injuries first manifested themselves in 1996, USF & G has no duty to defend its insureds in the underlying action.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1.  That the Motion for Summary Judgment filed by USF & G on November 20, 1998 (Doc # 12) be GRANTED; and

2.  That the Cross Motion for Summary Judgment filed by Southern Security Life Insurance Company and Sue Anne Gassett on January 11, 1999 (Doc # 24) be DENIED.

A separate declaratory judgment in favor of USF & G will be entered.