NORTH RIVER INSURANCE COMPANY, Plaintiff,

v.

BROWARD COUNTY SHERIFF'S OFFICE, Kenneth C. Jenne, II, Nick Navarro, Anthony Fantigrassi, Mark Schlein, Robert A. Butterworth, Phillip Amabile, Richard Scheff, Virginia Smith, in her capacity as personal representative of the Estate of Frank Lee Smith and Jerry Frank Townsend, Defendants.

No. 05–60747 CIV MOORE.

United States District Court, S.D. Florida.

April 21, 2006.

---

Joshua D. Lerner, Esq., Rumberger Kirk & Caldwell, Brickell Bayview Centre,

Miami, Darcy L. Ibach, Esq., Bollinger Ruberry & Garvey, Chicago, IL, for Plaintiff.

Richard Arthur Beauchamp, Esq., Thomas F. Panza, Esq., Marcy Elizabeth Abitz, Esq., Panza Maruer & Maynard, Fort Lauderdale, FL, for Defendants.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon North River Insurance Company's Motion for Summary Judgment (DE # 45) and Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law on the Duty to Defend (DE # 53).

UPON CONSIDERATION of the Motions, and all responses and replies thereto, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. Background

The instant action arises out of an insurance dispute between the North River Insurance Company ("Plaintiff") and the Broward County Sheriff's Office, and a number of its officers (collectively, "Defendants").

Currently pending in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida are two Complaints (the "Underlying Complaints") filed by men who were incarcerated over twenty years ago and only recently exonerated. One Complaint was filed by the estate of Frank Lee Smith, as Mr. Smith died in prison. Mr. Smith was arrested and incarcerated in 1985, died in prison in 2000 and was posthumously exonerated later that year. The second Complaint was filed by Jerry Frank Townsend. Mr. Townsend was arrested in 1979 and convicted in 1980, spent 22 years in prison, before he was exonerated and released from prison in June 2001. The Underlying Complaints allege a series of claims, ranging from false imprisonment to a number of 42 U.S.C. § 1983 claims.

Plaintiff in the instant action issued an insurance policy to Defendants beginning in October 1999 and ending in October 2002 (the "Policy"). The Policy provides liability insurance coverage with limits of $4 million per occurrence in excess of a self-insured retention, with the limits applying separately to each 12–month period. For the purposes of this action, the Policy potentially covers two different areas. The first area of coverage, Coverage A, insures against "Bodily Injury and Property Damage Liability." This insurance can only be applied if "[t]he 'bodily injury' or 'property damage' occurs during the policy period." The second area of coverage, Coverage B, insures against "Personal and Advertising Injury Liability." Under Coverage B, the insurer agrees to "pay those sums that the insured becomes obligated to pay as damages because of 'personal injury' ... to which this coverage part applies." "Personal injury" is later defined to mean "injury, other than 'bodily injury,' arising out of one or more of the following offenses .... False arrest, detention or imprisonment; ... malicious prosecution." This insurance is only applicable "if the offense was committed in the 'coverage territory' during the policy period." The Policy also includes an endorsement, specifically applicable to police officers, covering false arrest, detention or imprisonment, or malicious prosecution, "[i]f such offense is committed during the policy period ...."

The Plaintiff's primary argument is that no "bodily injury" or "personal injury" occurred during the policy period—that is, between October 1999 and October 2002. The parties agree that Plaintiff only has a duty to defend against the Underlying Complaints only if the Court finds that "bodily injury" or "personal injury" occurred during the Policy period. The Court agrees with Plaintiff and finds that no "bodily injury" or "personal injury" occurred during the Policy period and accordingly grants Plaintiff's motion for summary judgment.[1]

## II. Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a ra-

tional trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party:

may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. Summary judgment may be granted if the nonmovant fails to adduce evidence which, when viewed in a light most favorable to him, would support a jury finding in his favor. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the nonmoving party must "make a showing sufficient to establish the

---

1. It is undisputed that Florida law applies in this diversity action.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

Finally, "the interpretation of language in an insurance policy is a question of law properly decided on summary judgment." *Galen Health Care, Inc. v. American Co. of Reading*, 913 F.Supp. 1525, 1528 (M.D.Fla.1996). *See also, Fireman's Fund Ins. Co. v. Tropical Shipping & Construction Co.*, 254 F.3d 987, 1003 (11th Cir.2001) ("The question of the extent of coverage under an insurance policy is a question of law ...").

### III. Duty to Defend

In order for this Court to find a "duty to defend," the complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla.Dist.Ct.App.1978). "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811–12 (11th Cir.1985). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured ... and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered." *Id.* (internal citations omitted); *see also Lawyers Title Ins. Corp. v.*

*JDC Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (same); *Adolfo House Distributing Corp. v. Travelers Property & Casualty Ins. Co.*, 165 F.Supp.2d 1332, 1336 (S.D.Fla.2001) ("In Florida, as in other jurisdictions, an insurer's duty to defend hinges on whether the allegations of the complaint state a claim which potentially falls within the coverages defined by the policy. This question is resolved strictly by reference to the allegations of the underlying complaint, not by the actual facts, the insured's version of the facts or the insurer's defenses. Within these confines, the central inquiry is whether the allegations 'fairly and potentially' bring the transaction within the coverage provisions of the policy").

The insured, however, bears the burden of proving the claim falls within the Policy's affirmative grant of coverage. *East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla.App.2005). Where the contract is unambiguous, it will be enforced according to its plain meaning, giving effect to the policy as it was written. *Id.* at 676 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla.2003)).

### IV. Discussion

It is well-established that in order to trigger coverage under an insurance policy, "the accident or injury must occur during the time period of coverage; or stated otherwise, no liability exists if the accident or injury occurs outside the time period of coverage of a liability policy." *New Amsterdam Casualty Co. v. Addison*, 169 So.2d 877, 886 (Fla.Dist.Ct.App.1964). It is undisputed that Messrs. Smith and Townsend were neither arrested nor incarcerated during the policy period. The question before the Court is whether the

claims alleged in the Underlying Complaints occurred during the policy period. The Defendants argue that the ongoing nature of the injuries to Messrs. Smith and Townsend, coupled with the fact that they were actually exonerated during the period of coverage triggers Plaintiff's duty to defend against the Underlying Complaints.[2] *See* Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law on the Duty to Defend ("Def.Motion"), at 8–10. The Plaintiff claims that "[a]pplying the first manifestation trigger to the *Smith* and *Townsend* Complaints, to the extent a claim for bodily injury is stated, the bodily injury claims can only trigger the coverage in place when Smith's and Townsend's physical injuries first manifested themselves." Plaintiff's Brief in Support of its Motion for Summary Judgment ("Pl.Mot"), at 6; *id.* at 8–9 (same argument with regard to malicious prosecution claim).

■ In *Coregis Insurance Co. v. City of Harrisburg,* the Middle District of Pennsylvania considered a nearly identical issue, and ultimately granted summary judgment in favor of the Plaintiff insurance company that was seeking declaratory relief. In that case, Steven Crawford filed suit against the Commonwealth of Pennsylvania and a number of officers alleging malicious prosecution and false imprisonment, among other claims, when he was exonerated after serving 28 years in prison. 2006 WL 860710, *1 (M.D.Pa.

Mar. 30, 2006). And, like the facts in the instant case, the City of Harrisburg and Dauphin County attempted to invoke the coverage of policies that were in effect during his incarceration, but not in effect on the date of his arrest, or at the time of any other alleged wrongdoing. *Id.* The Middle District of Pennsylvania held that the applicable tort occurs when the injuries first manifest themselves. *Id.* at *8. Although there does not appear to be a Florida case directly on point, "Florida courts follow the general rule that the time of occurrence within the meaning of an indemnity policy is the time at which the plaintiff's injury first manifest .... The Florida courts have also stated that bodily injury or other identifiable event must occur during the policy period." *American Motorists Insurance Co. v. Southern Security Life Insurance Co.,* 80 F.Supp.2d 1280, 1284 (M.D.Ala.2000) (declining to extend insurance coverage to plaintiffs' alleged mental anguish, which occurred after the policy period had expired, and after the alleged fraud that caused the mental anguish occurred); *see also Travelers Insurance Co. v. C.J. Gayfers & Co.,* 366 So.2d 1199, 1202 (Fla.App.1979) (refusing to extend coverage "to include liability for the consequences of an occurrence beyond the policy period"); *Auto Owners Insurance Co. v. Travelers Casualty & Surety Co.,* 227 F.Supp.2d 1248, 1266 (M.D.Fla. 2002) ("[I]t is the damage itself which must occur during the policy period for coverage to be effective ... [T]he 'trigger' for cov-

**2.** The Defendants proffer two theories of "coverage" during the Policy period. Coverage A, which covers "bodily injury" and "property damage" is allegedly applicable to the Underlying Complaints' claim of failure to supervise/train, and other claims of negligence. The "occurrences" for the purposes of these claims allegedly took place throughout Messrs. Smith's and Townsend's respective incarcerations. Def. Mot. at 10–12. Coverage B, covering "personal injury" or "advertising injury" is allegedly applicable to the Underlying Complaints' malicious prosecution and false imprisonment claims. The "occurrences" for the purposes of Coverage B allegedly took place on the dates the convictions were vacated. Def. Mot. at 17.

erage [under the] policies is when the damage occurs and if damage is continuously occurring, the 'trigger' is the time the damage 'manifests' itself or is discovered").

In this case, it is clear that the damage "occurred" and manifested itself well before the Policy period. Years before the Policy was a glimmer in the Defendants' collective eye, Messrs. Lee and Townsend were allegedly wrongfully deprived of their liberty and falsely imprisoned—and any alleged malicious prosecution resulted in their imprisonment at that time. Not only would it strain logic to hold that a policy could be applied retroactively to activities undertaken twenty years earlier, but as a matter of public policy, if this Court were to deny Plaintiff's motion, it would be imposing on Plaintiff a risk based on the fortuitous occasion of the date of exoneration as opposed to the date when the damage first manifests itself, *i.e.,* the date of incarceration. While North River has a duty to defend lawsuits against officers for malicious prosecution or false imprisonment claims occurring during the Policy period, it is inconceivable that the calculation of the premium that Broward County paid North River in order to purchase the Policy included an analysis of *any* earlier prosecutions in Broward County and the likelihood of malfeasance over the course of those prosecutions. The better rule, and the rule that is consistent with Florida law, is to consider the time of the arrest and incarceration the "trigger" in both malicious prosecution and false imprisonment cases.

■ The Court further notes that although it need not consider whether the "trigger" should be the date charges are

filed, the date of arrest, or the date of imprisonment, because none of these events occurred during the Policy period, it finds the analysis in *Wallace v. City of Chicago,* 440 F.3d 421 (7th Cir.2006), instructive. In that case the Court of Appeals held that, for purposes of determining the commencement of the running of the statute of limitations for false arrest claims, the injury occurs at the time of arrest and has fully manifested at the time of arraignment. *Wallace,* 440 F.3d at 425. Thus, for a false arrest claim, an individual may recover damages only for injuries suffered in the period between the arrest and the arraignment. *Id.* This is because "a wrongful arrest claim ... does not inevitably undermine a conviction"—a false arrest claim can proceed before a conviction has been invalidated. *Booker v. Ward,* 94 F.3d 1052, 1056 (7th Cir.1996). A defendant's incarceration subsequent to an arraignment is no longer the consequence of the false arrest. Rather, any incarceration after arraignment arises, not from an arrest (whether valid or false), but from the filing of formal charges. This is distinguishable from constitutional claims that undermine the very essence of the conviction, which the Supreme Court has held cannot be brought until the defendant's conviction is nullified. *See Heck v. Humphrey,* 512 U.S. 477, 486–7, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Nonetheless, the issue before the Court today is not the timeliness of the claims of the underlying Complaints, but rather the applicability of an insurance policy to events occurring twenty years earlier and the date of the "trigger" for purposes of determining "personal" or "bodily" injury.[3]

The Defendants cite to a number of cases to support their position that the

---

**3.** For the reasons discussed above, the Court does not consider holding the trigger for the claims for which the Defendants seek coverage to be outside the policy period inconsistent with the Court's view that a constitutional claim that undermines a criminal

personal and bodily injuries in this case occurred during the policy period. Defendants in particular rely heavily on *Roess v. St. Paul Fire & Marine Insurance Co.,* which dealt with a malicious civil prosecution, for the proposition that "the tort of malicious prosecution in Florida does not arise, mature or accrue until all of the essential elements of the tort have materialized, including favorable termination of the malicious action in favor of the victim." 383 F.Supp. 1231, 1235 (M.D.Fla.1974). As an initial matter, the *Roess* decision has been "consistently criticized" by other courts. *See Zurich Ins. Co. v. Peterson,* 188 Cal.App.3d 438, 447, 232 Cal.Rptr. 807 (Cal.App.1986) (the *Roess* decision relies "upon the validity of its contention that the 'essence' of a malicious civil prosecution is the continued prosecution of the underlying civil complaint. We find this contention unpersuasive.... While some of the adverse consequences to the injured party will depend on whether a criminal prosecution is begun or a civil suit prosecuted, in each case a party's reputation is injured and legal expenses are incurred at the initiation of the malicious complaint." (internal citations omitted)); *Royal Indem. Co. v. Werner,* 979 F.2d 1299, 1300 (8th Cir.1992) ("we think it improbable that the term 'personal injury' is used in a technical sense to speak of a time when a cause of action has fully matured. It is more likely intended to describe the time when harm begins to ensue, when injury occurs to the person, that is, in this case, when the relevant law suit is filed"); *City of Erie v. Guaranty National Insurance Co.,* 109 F.3d 156, 159 (3d Cir.1997) (holding that

the tort of malicious prosecution "occurs" when "the injuries caused by the tort first become apparent or manifest themselves. In the case of malicious prosecution, it is undisputed that the injuries caused by the tort first manifest themselves at the time the underlying criminal charges are filed"); *Ethicon Inc. v. Aetna Casualty & Surety Co.,* 688 F.Supp. 119, 127 (S.D.N.Y.1988) ("In a criminal or civil prosecution that is malicious from its inception, injury begins to flow from the time when the complaint is filed. This is no less true of a civil prosecution that becomes malicious only later. The party being sued suffers the same injury whether the plaintiff knows the suit is baseless when the suit is commenced or only discovers later that the complaint lacks merit"); *Southern Maryland Agricultural Ass'n, Inc. v. Bituminous Casualty Corp.,* 539 F.Supp. 1295, 1302 (D.Md.1982) ("the 'offense' of malicious prosecution is committed, for insurance coverage purposes, when the alleged tortfeasor takes action resulting in the application of the State's criminal process to the claimant"). Furthermore, as discussed above, the Court finds that an "occurrence" in a malicious prosecution case and false imprisonment case is the date the Plaintiffs in the Underlying Complaints were actually harmed, not the date they were allegedly vindicated.

Defendants' reliance on *Trizec Properties, Inc. v. Biltmore Construction Co.* is also misplaced, and stems from Defendants' over-emphasis of the phrase "continuous or repeated exposure." In *Trizec,* the Court of Appeals held that in the case of a faulty roof installation, although the

---

conviction cannot be brought until the defendant's conviction is nullified. If, in this case, the Defendants were asserting coverage of constitutional claims (which they are not), those claims would be outside the poli-

cy period as well—although the statute of limitations on those claims may not have begun to run until Messrs. Lee and Townsend were in fact exonerated.

leak and ensuing damage did not fully "manifest" itself until a few years after installation, the specific language of that insurance policy triggered coverage when an "occurrence" results in property damage. 767 F.2d 810, 813 (11th Cir.1985). Although in that case the date of the damage was not expressly alleged, the Court found that it "may have begun to occur immediately after installation ... and continued gradually over a period of time .... At this stage in the proceedings, we have no way of conclusively knowing exactly when the damage occurred." *Trizec,* 767 F.2d at 813. This is analogous to the asbestosis line of cases, in which courts have distinguished the facts in those cases from cases similar to that *sub judice* by noting that "the injuries caused by exposure do not manifest themselves until a substantial time after the exposure causing the injury." *City of Erie,* 109 F.3d at 164. *See also American Motorists Insurance Co.,* 80 F.Supp.2d at 1284 ("In declining to apply the exposure theory in this case, the court notes that an exposure theory is inapposite where it is possible to determine exactly when the bodily injury begins"); *Coregis Ins. Co.,* 2006 WL 860710, at *9 ("the multiple trigger theory has been adopted in very limited circumstances, such as asbestosis, where the injuries caused by exposure do not manifest themselves until a substantial time after the exposure causing the injury.... Courts have justified use of a multiple trigger theory of liability in such cases due to a long latency period of the injuries caused by asbestosis and similar disease, and concern that insurers facing numerous future claims would terminate coverage .... such policy considerations [are inapplicable in malicious prosecution cases because in those cases] there is no interval between arrest and injury that would al-

low an insurance company to terminate coverage") (internal quotations omitted). Furthermore, the phrase "continuous or repeated exposure ... has doubtful application in a situation such as the present case," and would place "considerable strain on the words 'exposure' and 'conditions.' " *Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 255 Conn. 295, 765 A.2d 891, 900 (2001). *See also Koikos v. Travelers Ins. Co.,* 849 So.2d 263, 268 (Fla.2003) (same). "Exposure" and "generally harmful conditions" conjure images of lead based paint and asbestos fibers, not false imprisonment and malicious prosecution (which *preceded* the Policy period).

Thus, consistent with Florida law, the Court finds that the "bodily injury" and "personal injury" covered by Defendants' insurance from 1999 through 2002 cannot be invoked to cover allegations of malicious prosecution, false imprisonment and numerous allegations of negligence and civil rights violations that "occurred" twenty years earlier.

## V. Conclusion

Based on the foregoing, it is ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgement (DE # 45) is GRANTED. Defendants's Motion for Summary Judgment (DE # 53) is DENIED. This case is CLOSED. All motions not otherwise ruled upon are DENIED AS MOOT.