TAYLOR, J.
This appeal involves a dispute between two general liability insurance companies, Pennsylvania Lumbermens Mutual Insurance Company (PLM) and Indiana Lum-bermens Mutual Insurance Company’s (ILM), concerning the duty to defend and the duty to indemnify Causeway Lumber Company (Causeway) in the underlying construction defect litigation. ILM and PLM both insured Causeway during different time periods. The trial court granted ILM’s motion for summary judgment and awarded ILM its attorney’s fees and *184 costs expended in defending Causeway and the amount it spent settling the suit against Causeway. We reverse the portion of the final judgment awarding ILM defense costs because ILM had a duty to defend the insured. We affirm, however, that portion of the final judgment awarding ILM indemnity costs for the settlement amount it paid to resolve the lawsuit.
ILM insured Causeway from April 30, 2000 to April 30, 2001, and PLM insured Causeway from June 1, 2001 to June 1, 2005. The dispute between ILM and PLM arose from a construction defect lawsuit brought by homeowners Devon and Roslyck Paxson.
In March 2000, the Paxsons purchased a home from Ecclestone Signature Homes Company, the developer and general contractor of the residential project. The developer subcontracted Causeway to install the exterior doors to the home. In 2005, the homeowners filed a lawsuit against the developer, seeking recovery for damages incurred from water intrusion. The developer filed a third party complaint against the subcontractor, the supplier and installer of the exterior doors, seeking indemnity or contribution at common law and contractual indemnity pursuant to the express terms of the subcontract. The complaint alleged that the damages suffered by the homeowners occurred sometime after February 17, 2000.
The subcontractor tendered the defense of the lawsuit to ILM and PLM, its general liability insurance companies. PLM did not provide a defense and did not participate in the settlement of the case. ILM provided a defense to the subcontractor under a reservation of rights agreement. Under the reservation of rights, the subcontractor agreed to reimburse ILM for expenses incurred in defending the action if it was determined that there was no coverage for the claims against the subcontractor under ILM’s policy. The agreement stated:
ILM further reserves the right to bring a declaratory judgment action to determine its duties to Causeway [Subcontractor] under the Policy, and to seek reimbursement of sums spent in any defensive actions, settlements or any judgments in connection with this matter, from Causeway [Subcontractor] or its other carriers.
In December 2006, the property damage claims brought by the homeowners against the subcontractor were settled at mediation. ILM agreed to pay $40,000 to settle the claims. ILM then filed the action below against PLM, seeking a declaration that there had been coverage for the claims against the subcontractor under PLM’s policies and no coverage under ILM’s policy. ILM sought to recover the $40,000 in indemnity costs, as well as its defense costs. The complaint alleged that PLM breached its contractual obligations to the subcontractor by denying a defense and coverage.
The complaint further alleged that the subcontractor assigned its cause of action against PLM to ILM. ILM’s contribution to the settlement was contingent on the subcontractor assigning its rights to ILM to pursue a claim against PLM for failing to fulfill its defense and indemnity obligations under its policies issued to the subcontractor. In exchange, ILM released the subcontractor from its obligation under the reservation of rights agreement to reimburse ILM for the defense costs and indemnity funds expended in the action between the subcontractor and the homeowners. The assignment that ILM obtained from the subcontractor stated that:
Causeway [Subcontractor] agrees and does hereby assign without recourse, any and all of its rights and interest in *185 coverage for the claims made in the Lawsuit provided under the policies issued to Causeway by PLM.
In exchange for Causeway’s assignment of its rights to recovery under the PLM policies for any claims made in the Lawsuit, ILM hereby releases Causeway from any claims, causes of action or damages which it now has or may have.
The dispute between ILM and PLM involves the timing of the property damage. The standard CGL policies issued to the subcontractor by both ILM and PLM provide that coverage under each policy applies “only if ... [t]he ‘bodily injury’ or ‘property damage’ occurs during the policy period.”
The parties engaged in discovery to determine when the damage occurred. Mr. Paxson, an interior designer of the home, an insurance adjuster of the home, and an environmental scientist were deposed. Mr. Paxson testified during his deposition that the first time he noticed any problems was after Hurricane Frances. Hurricane Frances hit his area in September 2004. He said he never observed any water intrusion or any damage before the hurricane. The interior designer testified that the first time she observed any damage around the doors was after the hurricane. The insurance adjuster testified that the damages were determined to have occurred on or about September 5, 2004. The environmental scientist, who inspected the home in March 2005, determined that water damage commenced within fifteen months of his inspection. However, he noted that there could have been moisture intrusion through a balcony door when the homeowner first resided on the premises that did not result in damage.
The environmental scientist also testified about a conversation that he had with the homeowner during the inspection. The scientist relied on his notes in a report that he wrote during the inspection. According to the scientist, the homeowner told him that he had experienced trouble with water intrusion around the windows and doors since the completion of construction. When the homeowner was confronted with this inconsistent statement, the homeowner responded, “I did not say anything about the doors. I only had a couple of windows leak the first year that I moved in, but there was no door leakage.”
ILM filed a motion for summary judgment seeking a declaratory judgment determining that: (1) the ILM policy did not cover the subcontractor; (2) the PLM policy provided coverage; (3) because PLM provided coverage, PLM breached its duty to defend the subcontractor, which subjected the subcontractor to a claim by it against ILM for defending under the reservation of rights agreement; (4) that ILM, as assignee of the subcontractor’s claim against PLM, is entitled to be reimbursed its costs of defending; and (5) ILM is entitled to recover its attorney’s fees for prosecuting the declaratory judgment action against PLM. In the motion, ILM admitted that it owed the subcontractor a duty to defend.
The trial court granted ILM’s motion for summary judgment, reserving jurisdiction as to damages. ILM was awarded $40,000 for the amount expended to settle the homeowners’ action against the subcontractor, the indemnity costs, and $132,482.06 for attorney’s fees and costs expended in defending the subcontractor. The court entered a final judgment in the amount of $172,482.06, plus prejudgment interest in the amount of $40,710.74. The trial court reserved jurisdiction to enter an award of attorney’s fees and costs incurred by ILM in prosecuting the declaratory judgment action against PLM.
In this appeal, PLM argues that the trial court erred in awarding ILM defense *186 costs because ILM had a duty to defend, and that ILM was not entitled to summary judgment on the duty to indemnify because disputed issues of fact existed.
“An insurer’s duty to defend is distinct from and broader than its duty to indemnify.” Keen v. Fla. Sheriff’s Self-Insurance, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007). The duty to defend is determined solely by the allegations in the complaint. McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass’n, 758 So.2d 692, 695 (Fla. 4th DCA 1999). The duty to defend arises when the complaint alleges facts which create potential coverage under the policy, regardless of the truth of those allegations. Jones v. Fla. Ins. Guar. Ass’n, 908 So.2d 435, 443 (Fla.2005); State Farm Fire & Cas. Co. v. Higgins, 788 So.2d 992, 996 (Fla. 4th DCA 2001).
“Once the insurer’s duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit.” Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 815 (Fla. 1st DCA 1985); see also Kings Point W., Inc. v. N. River Ins. Co., 412 So.2d 379, 380 (Fla. 2d DCA 1982) (holding that the trial court “erred in looking beyond the allegations of the complaint to determine that a duty to defend did not arise below”).
ILM has admitted that it had a duty to defend Causeway based on the third-party complaint’s allegations of covered losses that could have occurred during the ILM policy period. However, ILM contends that it was entitled to recover its defense costs because the evidence ultimately showed that its policy did not provide coverage for Causeway’s claims and because Causeway became obligated under the terms of the reservation of rights agreement to reimburse ILM for all sums expended in Causeway’s defense and settlement of claims.
ILM was not entitled to reimbursement of attorney’s fees and costs expended in defense, even though it was eventually determined that the claim was not covered by the policy. See Wendy’s of N.E. Fla., Inc. v. Vandergriff, 865 So.2d 520, 521 (Fla. 1st DCA 2003) (stating that generally an insurer is not entitled to attorney’s fees when it has a duty to defend its insured against claims). Although ILM had a contractual duty to defend the subcontractor, it argues that it is entitled to defense costs because PLM refused to defend, thereby breaching its insurance contract with the subcontractor. However, there is no right of reimbursement to defense costs between primary insurers of a common insured. See Cont’l Cas. Co. v. United Pac. Ins. Co., 637 So.2d 270, 272 (Fla. 5th DCA 1994) (stating that “traditional principles of subrogation will not support a reimbursement of defense costs in favor of someone who has the independent contractual duty to pay all such expenses”) (citing Argonaut Ins. Co. v. Md. Cas. Co., 372 So.2d 960, 964 (Fla. 3d DCA 1979));[1] see also Lumbermens Mut. Cas. *187 Co. v. Foremost Ins. Co., 425 So.2d 1158, 1160 (Fla. 3d DCA 1983) (“As to the attorneys fees and costs Lumbermens seeks to recover herein, we find they are fees and costs incurred by Lumbermens on its own behalf and were not those rendered on behalf of its insured); see also Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc., 613 F.Supp.2d 1310, 1322 (M.D.Fla.2009) (applying Florida law and denying a claim of contribution from one insurer to another associated with defending a mutual insured).
ILM argues that while “there does not generally appear to be a right of contribution or subrogation in Florida between two insurers with coextensive duties to defend, the question is utterly irrelevant to the instant case.” According to ILM, it is entitled to recover its defense costs, not as contribution or even indemnity from another insurer, but “by standing in the shoes of the insured to whom PLM owed the duty that it breached.” ILM contends that the subcontractor became obligated to reimburse ILM all sums expended because the evidence demonstrated that ILM’s policy did not provide coverage, and the subcontractor agreed to reimburse ILM sums spent in any defense actions under the reservation of rights agreement. The subcontractor obtained a release of this liability to ILM in exchange for an assignment to ILM of its rights against PLM. The subcontractor had a cause of action against PLM for breaching its contract of insurance by denying it a defense. In support of this argument, ILM relies on Colony Ins. Co. v. G & E Tires & Service, Inc., 777 So.2d 1034 (Fla. 1st DCA 2000) and Jim Black & Associates, Inc. v. Transcontinental Ins. Co., 932 So.2d 516 (Fla. 2d DCA 2006).
In Colony Insurance, an insurance company repeatedly refused to defend its insured because it alleged that coverage did not apply. 777 So.2d at 1035-36. Only after reserving its right to be reimbursed for defense costs incurred in the absence of coverage did it agree to provide a defense. Id. at 1036. The court stated: “We have been unable to find reported decisions by Florida courts on when or whether an insurer should be reimbursed for costs (including attorney’s fees) expended in defending claims which do not, as alleged, give rise even to a potential duty to defend.” Id. at 1038. After looking to other courts addressing the question, the court held that the insurer was entitled to reimbursement because the insurer reserved the right to seek reimbursement of the costs of “defending clearly uncovered claims” and “no duty to defend ever existed ”. Id. at 1039.
In Jim Black, an insurer disputed coverage but agreed to defend the insured under a reservation of rights. 932 So.2d at 517. The court held that the insurer was entitled to reimbursement “[n]ow that is has been determined that [the insurer] never had a duty to defend.” Id. at 518 (emphasis added).
Colony Insurance and Jim Black are distinguishable from the instant case. Unlike the insurance companies in Colony Insurance and Jim Black, who never had a duty to defend, the insurance company in this case, ILM, did have a duty to defend. Also, ILM admitted that it owed this duty to the subcontractor. Colony Insurance *188 and Jim Black recognize that an insurer can seek reimbursement of its costs in defending an insured pursuant to a reservation of rights when the insurer owed no duty to defend. Here, ILM had a duty to defend based on the allegations of the complaint. Thus, Colony Insurance and Jim Black are inapplicable.
If Colony Insurance and Jim Black recognized that an insurer could seek reimbursement for defense costs, even when a duty to defend existed, as long as the insured signed a reservation of rights agreement, then insurance companies could avoid their contractual obligations to provide a defense by simply having the insured sign a reservation of rights. This is contrary to case law and public policy. See Argonaut 372 So.2d at 964 (stating that contribution for costs or attorney’s fees between insurance companies is contrary to public policy and explaining why).
In sum, the trial court erred in awarding ILM defense costs. ILM was not entitled to reimbursement of defense costs from PLM because it had an independent contractual duty to defend the subcontractor.
The trial court did not err, however, in awarding ILM indemnity costs. While the duty to defend is broad and based on the allegations in the complaint, the duty to indemnify is determined by the facts adduced at trial or during discovery. U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So.2d 686, 691 (Fla. 4th DCA 2006).
Here, PLM argues that the trial court erred in awarding indemnity costs to ILM because disputed issues of fact existed as to when property damage occurred. The ILM and PLM policies provided that the insurance applies “only if ... [t]he “bodily injury” or “property damage” occurs during the policy period.” PLM argues that there is conflicting evidence in the record as to when the homeowners suffered water intrusion; thus there can be no summary judgment absolving ILM of having to provide indemnity coverage.
Conflicting evidence existed because the homeowner testified that he never observed any water intrusion or resulting damage until after Hurricane Frances, which was in September 2004, three years after ILM’s policy terminated. The testimony of the environmental scientist contradicted the homeowner because he testified that the homeowner told him that he began to notice water intrusion around the doors and windows at the end of the construction process. Although the scientist’s hearsay testimony is admissible as extrinsic evidence of a prior inconsistent statement to impeach the homeowner under section 90.614, Florida Statutes, his testimony does not go to a disputed issue of material fact. See Cont’l Concrete, Inc. v. Lakes at La Paz III Ltd. P’ship, 758 So.2d 1214, 1217 (Fla. 4th DCA 2000) (“A material fact, for summary judgment purposes, is a fact that is essential to the resolution of the legal questions raised in the case.”).
When the water intrusion occurred is not essential to the resolution of the legal question raised in this case because coverage is triggered by the resulting damage to the property caused by the water. The plain language of the CGL policies issued by both ILM and PLM stated that the insurance applies “only if ... [t]he ... ‘property damage’ occurs during the policy period.” In this case, the homeowner observed no resulting damage connected to the exterior doors until after Hurricane Frances, which was in September 2004. The interior designer testified that the first time she observed damage around the doors was after the hurricane. The insurance adjuster testified that damages were determined to have occurred on or about September 5, 2004. The environmental *189 scientist inspected the home and determined that water damage commenced within months of his inspection, which was on March 15, 2005.
Although the scientist stated that there “could have been” moisture intrusion through a balcony door that did not result in damage, coverage is not triggered until the intrusion causes damages to the premises. The scientist testified that based on his physical observation of the premises, there was no physical damage caused by water intrusion that would support the homeowner’s alleged prior inconsistent statement that water intrusion began at the completion of construction. His observations did not reveal deteriorated wood or discoloration. Rather, the scientist’s personal observations showed that the damage of discoloration commenced within months of his inspection, which was in March 2005. Thus, the uncontroverted testimony established when the physical damage occurred, which was the event that triggered coverage under PLM’s policy.
PLM and ILM rely on different case law for their positions on when an event triggers coverage under an insurance policy. ILM argues that Florida has adopted a “manifestation” trigger of coverage theory. Under the “manifestation” theory, coverage is triggered when property damage manifests itself. Assurance Co. of Am. v. Lucas Waterproofing Co., 581 F.Supp.2d 1201, 1206 (S.D.Fla.2008). PLM argues for an “injury-in-fact” trigger of coverage theory. Under this theory, coverage is triggered when an occurrence results in property damage. Trizec Props., Inc. v. Biltmore Constr. Co., Inc., 767 F.2d 810, 813 (11th Cir.1985).
Regardless of which trigger theory of coverage applies, there is no issue of material fact in this case. When the water intrusion occurred is not relevant because coverage is triggered by the resulting damage to the property caused by the water. The uncontroverted testimony established that physical damage occurred from water intrusion during PLM’s policy. Thus, the trial court correctly determined that ILM was entitled to summary judgment on coverage since there were no disputed issues of material fact as to when physical damage caused by the water intrusion occurred. We therefore affirm the trial court’s award of indemnity costs to ILM and reverse only the award of defense costs to ILM.

Affirmed in part and Reversed in part.

WARNER and MAY, JJ., concur.

. The court in Continental Casualty Insurance Company quoted extensively from Argonaut. In Argonaut, the court explained that:
The Legislature has not seen fit to allow contribution for costs or attorney's fees between insurance companies. If contribution for costs were allowed between insurance companies, there would be multiple claims and law suits. The insurance companies would have no incentive to settle and protect the interest of the insured, since another law suit would be forthcoming to resolve the coverage dispute between the insurance companies. This is contrary to public policy, particularly since the insured has been afforded legal protection and has not had to personally pay any attorney's fees.
*187 Argonaut, 372 So.2d at 964. The Argonaut court also rejected the argument that an equitable right to subrogation should be created to discourage insurers from shirking their duty to defend because an insured is adequately protected when its insurer breaches its contract. Argonaut, 372 So.2d at 964. "All necessary remedies and protection to the proper parties are available to enforce all necessary rights.” Id. (citing section 627.421(1), Florida Statutes).