DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. J046137; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. J056137; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. J076137; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. J086137,** and **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. J096137,**
Appellants,

v.

**GEORGE PIERSON** and **WILLIAM MANTESTA,**
Appellees.

No. 4D20-643

[June 2, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. CACE 16-12896 (05).

Patrick E. Betar, William S. Berk and Melissa M. Sims of Berk, Merchant & Sims, PLC, Coral Gables, for appellants.

Stephen A. Marino, Jr., Michal Meiler and S. Alice Weeks of Ver Ploeg & Marino, P.A., Miami, for appellees.

DAMOORGIAN, J.

The instant appeal arises out of an insurance dispute between Certain Underwriters at Lloyd's, London ("the Insurer") and George Pierson and William Mantesta ("the Officers"). Prior to the underlying suit, the Officers were found liable in a suit brought by Anthony Caravella ("Caravella") for civil rights violations that took place over twenty years earlier. In the instant case, the Officers sued the Insurer for failing to indemnify them in the prior action. The trial court entered summary judgment in the Officers' favor, concluding that the insurance policies were triggered because Caravella's damages extended into the policy periods.

On appeal, the Insurer argues that it had no duty to indemnify the Officers for two key reasons: (1) the issued policies were not in effect when the misconduct occurred; and (2) the policies expressly exclude coverage for intentional acts. Alternatively, if it did have a duty to indemnify, the Insurer argues that the court failed to conduct an evidentiary hearing to determine the correct amount of damages. Finding merit in the Insurer's argument that it did not have a duty to indemnify because the misconduct did not occur during the policy periods, we reverse and remand for entry of summary judgment in favor of the Insurer. In light of our holding, the other issues before this Court are moot and will not be addressed.

From 1983 to 1984, Caravella, a 15-year-old boy with a low IQ, was convicted of murder and sentenced to life in prison. In 2010, DNA evidence was found proving his innocence, and, following his exoneration, Caravella brought civil rights claims under 42 U.S.C. § 1983 against the Officers. In his complaint, Caravella alleged that the Officers physically and verbally forced his confession years earlier. The jury found that the Officers intentionally violated Caravella's Fourth, Fifth, and Fourteenth Amendment rights and awarded Caravella $7,000,000 in damages.

Thereafter, the Officers filed a complaint for indemnification against the Insurer. In their complaint, the Officers alleged that their former employer, the City of Miramar, held an occurrence-based commercial general liability policy issued by the Insurer from 2004 to 2010 and that under the terms of the policies the Officers were entitled to indemnification for the judgment amount entered against them.[1]

In support of their claim, the Officers cited to Section II of the 2004, 2005, 2007, and 2008 policies ("Section II") which provides that the Insurer agrees to indemnify the assured for:

> damage direct or consequential . . . on account of PERSONAL INJURY . . . suffered or alleged to have been suffered by any person(s) . . . arising out of any OCCURRENCE from any cause including . . . liability arising out of LAW ENFORCEMENT ACTIVITIES happening[2] during the PERIOD OF INSURANCE.

The Officers also cited to Section VIII of the 2009 policy ("Section VIII") which similarly provides that the Insurer agrees to indemnify the assured for:

---

[1]  There were five different policies issued during this period.
[2]  The 2008 policy uses the word "occurring" instead of "happening."

damage, direct or consequential . . . on account of PERSONAL INJURY . . . suffered or alleged to have been suffered by any person(s) . . . resulting out of LAW ENFORCEMENT ACTIVITIES . . . happening during the PERIOD OF INSURANCE.

The policies defined the above referenced capitalized terms as follows:

LAW ENFORCEMENT ACTIVITIES means the activities of any ASSURED while acting as a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the NAMED ASSURED.

. . . .

PERIOD OF INSURANCE means the length of time that the policy is in force as stated in the Declaration Page as the Effective Date and Expiration Date.

PERSONAL INJURY means any Injury. . . arising out of . . . Malicious Prosecution . . . False Arrest; False Imprisonment; and Detention.  In addition, as respects LAW ENFORCEMENT ACTIVITIES only, PERSONAL INJURY also includes any injury . . . arising out of . . . Violation of Civil Rights.

. . . .

OCCURRENCE means an accident or a happening or event or a continuous or repeated exposure to conditions which results in . . . PERSONAL INJURY during the PERIOD OF INSURANCE.

The Insurer moved for final summary judgment and argued that, based on the plain language of the policies, it had no duty to indemnify the Officers because the misconduct did not occur during the policy periods. To further buttress its argument, the Insurer relied on *North River Insurance Co. v. Broward County Sheriff's Office*, 428 F. Supp. 2d 1284, 1288 (S.D. Fla. 2006) (*North River*), wherein the court, applying the manifestation theory, arrived at a similar conclusion.  In their response and cross motion for partial summary judgment, the Officers argued that Caravella's ongoing incarceration and resulting continuous injuries triggered coverage under the policies.  In so arguing, the Officers relied on the "injury-in-fact" and "continuous" trigger theories.

The matter ultimately proceeded to a hearing on the issue of whether the Insurer had a duty to indemnify under the policies. The court concluded that the Insurer had a duty to indemnify, reasoning that the policies covered repeated events resulting in injury which triggered coverage during the policy periods. In particular, the trial court explained that even though repeated events could only be considered one occurrence, "[n]othing in this provision limits the 'OCCURRENCE' to the earliest possible point in time, and continuous injuries can span several policy periods and trigger one occurrence per policy in effect when the injury is being suffered." Alternatively, the court explained that even if Section II were not triggered, "coverage would still be triggered under [Section VIII]" because Caravella was exonerated while the 2009 policy was in effect. The court thereafter entered final judgment in favor of the Officers, but limited execution of the judgment to $5,000,000, the maximum amount allowed under the policies. This appeal follows.

"Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties, and ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 694–95 (Fla. 4th DCA 1999) (quoting *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997)). Moreover, "coverage clauses are construed in the broadest possible manner to affect the greatest extent of coverage." *Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002) (quoting *McCreary*, 758 So. 2d at 695).

With these parameters in mind, we address whether the Insurer had a duty to indemnify the Officers under the plain language of the policies. The policies provide coverage for "damage . . . arising out of any OCCURRENCE from any cause including . . . liability arising out of LAW ENFORCEMENT ACTIVITIES *happening during THE PERIOD OF INSURANCE*" or "damage . . . alleged to have been suffered by any person(s) . . . resulting out of LAW ENFORCEMENT ACTIVITIES . . . *happening during the PERIOD OF INSURANCE*." As the italicized language makes clear, the "occurrence" giving rise to liability must happen during the period of insurance. *See New Amsterdam Cas. Co. v. Addison*, 169 So. 2d 877, 886 (Fla. 2d DCA 1964) ("[G]enerally, the accident or injury must occur during the time period of coverage; or stated otherwise, no liability exists if the accident or injury occurs outside the time period of coverage of a liability policy."). Since it is undisputed that the Officers' misconduct occurred twenty years prior to the execution of the policies, there can be no duty to indemnify in this case. *See, e.g., Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 43 So. 3d 182, 188–89 (Fla. 4th DCA

4

2010) (insurer had no duty to indemnify where the evidence established that damage occurred after the expiration of the policy and the policy provided coverage for damage which "occurs during the policy period"); *Bill Binko Chrysler-Plymouth, Inc. v. Compass Ins. Co.*, 385 So. 2d 692, 694 (Fla. 4th DCA 1980) (insurer not liable to insured where the policy stated that it covered bodily injury "which occurs during the policy period" and the bodily injury occurred after the expiration of the policy). As such, the fact that Caravella suffered the consequences of the Officers' wrongful conduct throughout his incarceration, including while the subject policies were in effect, is irrelevant for purposes of determining whether the Insurer has a duty to indemnify. Likewise, the fact that Caravella was exonerated while the 2009 policy was in effect is of no consequence. *See North River*, 428 F. Supp. 2d at 1290 (holding in the context of an occurrence-based policy that using the date of exoneration to determine coverage "would be imposing on [the insurance company] a risk based on the fortuitous occasion of the date of exoneration as opposed to the date when the damage first manifests itself, *i.e.*, the date of incarceration").

Our holding is consistent with the general purpose of an occurrence-based policy. *See Fremont Indem. Co. v. Gierhart*, 560 So. 2d 1223, 1225 (Fla. 3d DCA 1990) ("[A]n occurrence policy offers coverage where 'the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted.'" (quoting *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 514 (Fla. 1983))); *North River*, 428 F. Supp. 2d at 1290 (generally stating in the context of an occurrence-based policy that "it is inconceivable that the calculation of the premium that [the county] paid [the insurance company] in order to purchase the Policy included an analysis of *any* earlier prosecutions in [the county] and the likelihood of malfeasance over the course of those prosecutions").

In light of our holding that there is no duty to indemnify based on the plain language of the policies, we need not reach the parties' alternative arguments regarding which trigger theory applies. *See Pa. Lumbermens Mut. Ins. Co.*, 43 So. 3d at 189 (declining to determine which trigger theory applied because summary judgment could be decided based on the plain language of the policy). *Cf. Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805, 808 (4th Cir. 1998) (explaining how the trigger theories are generally used in the context of deciding when damage occurred "in cases involving progressive damages, such as latent defects, toxic spills, and asbestosis" because the time between the "injury-causing event (such as defective construction, a fuel leak, or exposure to asbestos), the injury itself, and the injury's discovery or manifestation can be so far apart").

For the foregoing reasons, we reverse the final summary judgment entered in favor of the Officers and remand with instructions that the court enter summary judgment for the Insurer.

*Reversed and remanded.*

WARNER and FORST, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***